In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-4088

RONALD D. SMART, doing business
as PASCHALL ELECTRIC,

*Plaintiff-Appellant,*

*v.*

LOCAL 702 INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, CHRISTOPHER
N. GRANT AND SCHUCHAT, COOK & WERNER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07 C 94—**David R. Herndon**, *Chief Judge.*

SUBMITTED APRIL 30, 2008—DECIDED APRIL 7, 2009

Before RIPPLE, KANNE and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Ronald Smart brought this
action asserting state-law claims against the International
Brotherhood of Electrical Workers, Local 702 ("IBEW"), its
counsel, Christopher Grant, and Mr. Grant's law firm,
Schuchat, Cook & Werner. The district court granted the

defendants' motion to dismiss. We now affirm in part and reverse and remand in part the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Mr. Smart is the sole proprietor of Paschall Electric, a non-union company. In 2003, Mr. Smart contracted to perform electrical work for the construction of a sports complex. He alleges that, after he entered into the contract, the IBEW coerced the owner of the sports complex to terminate his relationship with Mr. Smart; specifically, Mr. Smart alleges that the IBEW threatened to withhold services and otherwise to shut down the building project if the owner did not employ union workers instead of Mr. Smart. According to the complaint, the owner fired Mr. Smart and hired a company affiliated with the IBEW to complete the work on the project.

## B. District Court Proceedings

In response to the termination of Paschall Electric's services, Mr. Smart filed the present action in the United States District Court for the Southern District of Illinois. Mr. Smart alleged that the IBEW's coercive tactics violated the Illinois Antitrust Act, 740 ILCS 10/3. Mr. Smart also brought two additional claims. The first, a claim for unwarranted prosecution, was brought against the

IBEW, Mr. Grant and Schuchat, Cook & Werner. The second, a claim for legal malpractice, was brought against Mr. Grant and his firm. At the heart of these claims were earlier legal actions by the IBEW to recover employee contributions to a fringe benefit fund associated with a collective bargaining agreement ("CBA").[1]

The defendants moved to dismiss Mr. Smart's complaint on the grounds that: Mr. Smart's claims were preempted by the National Labor Relations Act ("NLRA"); they were barred by judicial estoppel; and they failed to state a claim upon which relief could be granted. The district court granted the motion. It determined that Mr. Smart's state antitrust claim was preempted by the

---

[1] At one time, Mr. Smart was a party to a CBA with the IBEW; the CBA obligated Mr. Smart to pay fees associated with that agreement to the IBEW. When Mr. Smart attempted to withdraw from the CBA, the IBEW sought to establish Mr. Smart's liability for those fees through arbitration. An arbitrator determined that Mr. Smart was responsible for making contributions. Subsequently, Mr. Smart instituted an action to vacate the arbitral award, and the IBEW counterclaimed for enforcement. The district court granted summary judgment to the IBEW, and we affirmed on appeal. *See Smart v. IBEW*, Local 702, 315 F.3d 721 (7th Cir. 2002). Later, the IBEW and the trustees of various employee-benefit funds brought an action against Mr. Smart for failure to pay benefit contributions and to file reports associated with those contributions. Mr. Smart failed to answer the complaint, and default judgment was entered on behalf of the IBEW. Mr. Smart's efforts to vacate the default judgment were unsuccessful. *See Roan v. Smart*, Memorandum and Order, No. 03-cv-04065-DRH (S.D. Ill. June 30, 2003).

NLRA. With respect to the common law claims, the court held that Mr. Smart had pleaded himself out of court. Turning first to the malpractice claim, the court noted that "a legal malpractice claim can only be brought by a plaintiff against his former attorney, not against an attorney or law firm that has never represented the plaintiff . . . ." *Smart v. Int'l Bhd. of Elec. Workers, Local 702,* No. 07-cv-94-DRH, 2007 WL 4259972, at \*4 (S.D. Ill. Dec. 3, 2007). Concerning the "unwarranted" prosecution claim,[2] the court observed that, in order to prevail on this claim, Mr. Smart had to establish that he had prevailed in the underlying litigation. However, the court observed that none of the previous legal actions mentioned in Mr. Smart's complaint or in the IBEW's motion to dismiss were terminated in his favor.[3] Consequently, the district court dismissed both the malpractice claim and the unwarranted prosecution claim with prejudice. Mr. Smart timely appealed.

---

[2] Illinois courts refer to this tort as malicious prosecution; however, for consistency, we shall use the terminology employed by Mr. Smart.

[3] The court took judicial notice of the cases and their outcomes. *See Smart v. Int'l Bhd. of Elec. Workers, Local 702,* No. 07-cv-94-DRH, 2007 WL 4259972, at \*4 (S.D. Ill. Dec. 3, 2007). The court also observed that, in his responses to the IBEW's motion to dismiss, Mr. Smart "ha[d] failed to oppose the notion that the outcomes of these proceedings were not terminated in his favor." *Id.*

## II

## DISCUSSION

### A. Jurisdiction

Before turning to the merits of Mr. Smart's claims, we must address a threshold issue: whether the district court had subject matter jurisdiction over Mr. Smart's claims. Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (7th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Congress has conferred subject matter jurisdiction on the district courts only in cases that raise a federal question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331-32. Unless Mr. Smart's complaint falls into one of these two categories, we must dismiss the action for want of jurisdiction.

### 1.

Turning first to the possibility that the complaint falls within the court's diversity jurisdiction, we note that Mr. Smart, as the party seeking to invoke federal jurisdiction, bears the burden of demonstrating that the requirements for diversity are met. *See Pollution Control Indus. of America, Inc. v. Van Gundy*, 21 F.3d 152, 155 (7th Cir. 1994). Specifically, Mr. Smart must establish "complete diversity," "meaning that no plaintiff may be from the same state as any defendant." *Hart v. Fedex Ground Package Sys., Inc.*, 457 F.3d 675, 676 (7th Cir. 2006); *McCready v. eBay,*

*Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). However, neither Mr. Smart's complaint in the district court nor his brief to this court suggests that this requirement has been met. Quite the contrary, Mr. Smart, an Illinois citizen, asserts that one of the defendants is an Illinois law firm, which likely has partners who are Illinois citizens. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("The citizenship of a partnership is the citizenship of the partners, even if they are limited partners, so that if even one of the partners (general or limited) is a citizen of the same state as the plaintiff, the suit cannot be maintained as a diversity suit." (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990))).

**2.**

If we are to maintain jurisdiction over this appeal, Mr. Smart's complaint must raise a federal question. "Ordinarily, a court must determine the presence or absence of a federal question by examining only the plaintiff's well-pleaded complaint," *Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)); a federal defense to a state cause of action typically will not suffice, *see Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). This rule is followed even if the defense relies on "the pre-emptive effect of a federal statute." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) (citing *Franchise Tax Bd. of California v. Constr. Laborers Trust for S. Cal.*, 463 U.S. 1 (1983)).

At first blush, it does not appear that Mr. Smart has met this requirement; he included only state causes of

action in his complaint. Although the IBEW raised a federal defense to Mr. Smart's claims—the preemptive force of the NLRA—federal preemption ordinarily does not provide a basis for asserting federal jurisdiction over a claim.

There is, however, an exception to this general rule:

> "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). This "independent corollary" to the well-pleaded complaint rule is known as the "complete preemption" doctrine. *Id.* "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* . . .

*Nelson*, 422 F.3d at 466-67 (parallel citations omitted). Complete preemption is a term that describes "the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent" to extend the jurisdiction of the federal courts to such cases. *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).

To determine whether a claim is subject to complete preemption, we ask whether "Congress clearly intended completely to replace state law with federal law and

create a federal forum . . . ." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001). We never have articulated a precise method for discerning congressional intent in this area. A logical first step in this analysis is determining "whether the state claim is displaced by federal law under an ordinary preemption analysis." *Blab T.V. of Mobile, Inc. v. Comcast Cable Comms., Inc.*, 182 F.3d 851, 857 (11th Cir. 1999). If a federal statute preempts the state action, we then look to whether Congress created a federal cause of action to take the place of the state action. *See Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir. 2002) (stating that the "'ability to bring suit under [federal law] is an element of "complete preemption."'" (quoting *Vorhees*, 272 F.3d at 404)).

**a.**

Here Mr. Smart's state antitrust claim is preempted by federal law. In his complaint, Mr. Smart alleges that the IBEW threatened to "shut the project down if [the owner] continued to use Mr. Smart, a non union electrician, as opposed to a union electrician." R.1 at 2. Additionally, Mr. Smart claims that the IBEW threatened to have union electricians withhold work if the owner continued to use Mr. Smart's services. *Id.* at 2-3. As the IBEW recognizes, the activities described by Mr. Smart in his complaint arguably are prohibited by section 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4), which prohibits an attempt by a labor organization "to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . .

forcing or requiring any person . . . to cease doing business with any other person." 28 U.S.C. § 158(b)(4)(ii)(B); *see also* Appellee's Br. at 19-20. As such, the IBEW continues, Mr. Smart's claims are preempted by *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

In *Garmon*, the Supreme Court addressed whether an employer could maintain a state tort cause of action for damages incurred as a result of picketing activities that arguably were protected by section 7 of the NLRA.[4] The

---

[4] Section 7 of the NLRA, 29 U.S.C. § 157 provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

Section 8 of the NLRA, 29 U.S.C. § 158, defines "unfair labor practices" to include actions by employers that "interfere with, restrain, or coerce employees" in the exercise of section 7 rights or other collective, labor activities. *See* 29 U.S.C. § 158(a). Subsection (b) defines unfair labor practices by labor organizations and, relevant to Mr. Smart's claims, provides:

> (b) Unfair labor practices by labor organization

> It shall be an unfair labor practice for a labor organization or its agents--

> . . .

(continued...)

Court held that state regulation of labor relations must yield when it threatens to disturb the federal balance that Congress struck between prohibited and legitimate labor practices:

---

[4] (...continued)

(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--

. . .

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

. . . .

29 U.S.C. § 158(b).

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

*Id.* at 244 (footnote omitted). We have summarized this holding by stating that the NLRA preempts state claims based on conduct that is "arguably protected, arguably prohibited, or left to the domain of market forces" by the NLRA. *N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1005-06 (7th Cir. 2005); *accord Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004); *United States v. Palumbo Bros.*, 145 F.3d 850, 861-62 (7th Cir. 1998); *NLRB v. State of Ill. Dep't of Employee Sec.*, 988 F.2d 735, 738 (7th Cir. 1993).[5] More relevant to Mr. Smart's claims, the

---

[5] The *Garmon* rule does not apply to state statutes "rooted in local feeling and responsibility," such that preemption cannot be

(continued...)

Court has held that *Garmon* preempts the operation of state antitrust laws that attempt to regulate activity falling within the scope of the NLRA. *See Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 193 (1978) ("[A] state's antitrust law may not be invoked to enjoin collective activity which is also arguably prohibited by the federal Act.").

However, it is clear that preemption under *Garmon* is not "complete."[6] Every court to address the issue directly has reached this conclusion.[7] *See Lontz v. Tharp*, 413 F.3d

---

[5] (...continued)
inferred absent compelling congressional direction, nor does *Garmon* preempt claims that raise issues that are only collateral or peripheral to federal labor law. *United States v. Palumbo Bros.*, 145 F.3d 850, 864 (7th Cir. 1998); *NLRB v. State of Ill. Dep't of Employee Sec.*, 988 F.2d 735, 739 (7th Cir. 1993).

[6] Although the IBEW raised the issue of *Garmon* preemption, neither party took the additional step of addressing whether *Garmon* preemption was "complete" preemption. Consequently, we requested additional briefing by the parties on this issue and also solicited an amicus brief from Professor Gerald E. Berendt of the John Marshall Law School. We thank Professor Berendt for his excellent submission.

[7] In *Baker v. IBP, Inc.*, 357 F.3d 685 (7th Cir. 2004), we spoke in passing with respect to the scope of *Garmon* preemption. *Baker* involved a federal RICO claim which the district court had dismissed for want of subject matter jurisdiction because, according to the district court, the claim was preempted by *Garmon*. As part of our discussion, we stated that "federal labor law so occupies the field of labor relations that it is impossible
(continued...)

435, 442-43 (4th Cir. 2005) ("[S]ections 7 and 8 do not work to completely preempt the kind of state law claims that plaintiffs are pressing."); *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1165-66 (10th Cir. 2004) (holding that "*Garmon* preemption provides no basis for removal jurisdiction in federal court" and observing that "the lower courts are uniform in finding that Garmon preemption under the NLRA does not completely preempt state laws so as to provide removal jurisdiction"); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1396-1401 (9th Cir. 1988) (noting that "sections 7 and 8 do not confer original federal court jurisdiction over actions within its scope" and that "state law actions claimed to be preempted by sections 7 and 8 of the NLRA are not removable to federal court"). The primary rationale for the courts' decisions is that Congress not only "strip[ped] state courts of adjudicatory authority" with respect to activity arguably subject to sections 7 and 8, "in the very same breath it also deprive[d] federal courts of that authority." *Lontz*, 413 F.3d at 442 (internal quotation marks and citations omitted). This is

---

[7] (...continued)

to formulate a claim under state law"; however, we went on to observe that the plaintiffs in *Baker* had not raised any state claims, only federal claims under RICO. With respect to those federal claims, we held that, as "[a]pplied to claims in federal court, and arising under federal law, *Garmon* has nothing to do with either preemption or subject matter jurisdiction." *Id.* at 688. Therefore, we have not addressed the specific question raised by this appeal: whether *Garmon completely* preempts state antitrust claims involving labor activity.

because "the same 'exclusive competence' of the NLRB
which divests state courts of original jurisdiction over
claims subject to sections 7 and 8 also divests federal
courts of such jurisdiction." *Id.* (internal quotation marks
and citations omitted); *see also Felix*, 387 F.3d at 1166
("If *Garmon* preemption applies, the correct result is that
neither the federal court nor the state court has juris-
diction; the case must be adjudicated before the
NLRB."); *Ethridge*, 861 F.2d at 1400 ("Though sections 7 and
8 may create a federal cause of action, it is not within
the federal court's jurisdiction to resolve the dispute—it is
for the NLRB to decide the case."). Additionally, the courts
have observed that the "sine qua non of complete preemp-
tion is a pre-existing *federal* cause of action that can be
brought in district courts." *Lontz*, 413 F.3d at 442. However,
as noted above, the NLRB, not the courts, is vested with
primary jurisdiction for adjudicating labor disputes
under sections 7 and 8. Consequently, *Garmon* preemption
alone cannot provide a basis for federal jurisdiction
over Mr. Smart's alleged state-law claims that implicate
sections 7 and 8.

### b.

Our inquiry into federal jurisdiction is not at an end,
however. As we already have noted, the activities de-
scribed by Mr. Smart in his complaint arguably fall
within the coverage of section 8(b)(4) of the NLRA, 29
U.S.C. § 158(b)(4), which prohibits an attempt by a labor
organization "to threaten, coerce, or restrain any person
engaged in commerce or in an industry affecting com-

merce, where in either case an object thereof is . . . forcing or requiring any person . . . to cease doing business with any other person." 29 U.S.C. § 158(b)(4)(ii)(B). Another provision of federal labor law is pertinent to our inquiry. With respect to injuries resulting from a secondary boycott,[8] Congress *has provided* a means of redress in federal court. Specifically, 29 U.S.C. § 187 provides:

> (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in *section 158(b)(4)* of this title.

> (b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section *may sue therefor in any district court of the United States* subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187 (emphasis supplied).

---

[8]  In *National Woodwork Manufacturers Assoc. v. N.L.R.B.*, 386 U.S. 612 (1967), the Supreme Court observed that "[t]he gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands." 386 U.S. at 627, n.16 (quoting *Int'l Bhd. of Elec. Workers, No. 501 v. N.L.R.B.*, 181 F.2d 34, 37 (2d Cir. 1950)).

With respect to 29 U.S.C. § 187(b), there is ample evidence that Congress meant to "exercise [the] extraordinary pre-emptive power . . . that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co.*, 481 U.S. at 65. First, the language employed by Congress in section 187(b) is comparable to that employed in other statutes that the Court has found to be completely preemptive, particularly section 301 of the Labor Management Relations Act ("LMRA").[9] *See id.*

---

[9] Section 301 of the LMRA is codified at 29 U.S.C. § 185, which provides:

(a) Venue, amount, and citizenship

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

(b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments

Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the
(continued...)

(comparing ERISA's civil enforcement provision to that of section 301 of the LMRA and concluding, based on similar-

---

[9]  (...continued)

> courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.
>
> (c) Jurisdiction
>
> For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.
>
> (d) Service of process
>
> The service of summons, subpoena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.
>
> (e) Determination of question of agency
>
> For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

ity, that ERISA was meant to be completely preemptive). Indeed, the language of section 187(b) not only mirrors the broad language used by Congress with respect to section 301 of the LMRA, it also explicitly references section 301; it states:

> Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section may sue therefor in any district court of the United States *subject to the limitations and provisions of section 185 of this title* without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187(b) (emphasis added). Thus, Congress has indicated its intent that causes of action under section 187 and causes of action under 29 U.S.C. § 185 be treated in the same manner.

In addition to Congress' explicit instructions that actions under section 187 and section 185 be treated similarly, Congress' interests in uniform treatment of labor-management relations are equally at stake in both provisions. Both sections are part of a broad regulatory scheme that is both substantive and procedural, with a decided purpose of providing one, uniform means for the resolution of labor disputes. *See Palumbo Bros.,* 145 F.3d at 861 (noting that the NLRA is a "comprehensive" and specific framework in an area where uniformity is of the utmost importance to congressional regulation, reflecting "congressional intent to create a national, uniform body of labor law and policy to protect the stability of the collective bargaining

process, and to maintain peaceful industrial relations"); *State of Ill. Dep't of Employee Sec.*, 988 F.2d at 738 (noting that, in enacting the NLRA, Congress largely displaced state regulation of industrial relations, because Congress intended to create a uniform, nationwide body of labor law, and as such, the NLRA forecloses overlapping state law); *see also Nelson*, 422 F.3d at 467-68.

In sum, Congress has provided an explicit means of redressing alleged violations of section 158(b)(4) through section 187 of Title 29. Additionally, Congress has indicated that it intended causes of action arising under section 187 to be treated in the same manner as those arising under section 185. Finally, the same interest in the uniform treatment of labor relations is at play in both sections 185 and 187. Consequently, we hold therefore that section 187(b) *completely* preempts state-law claims related to secondary boycott activities described in section 158(b)(4); it provides an exclusive federal cause of action for the redress of such illegal activity. As a result, regardless of Mr. Smart's choice to articulate his claim under the Illinois Antitrust Act, he has pleaded a federal claim. The district court therefore had subject-matter jurisdiction over this action.

Our determination that Mr. Smart's state antitrust claim is completely preempted requires us to remand this part of the case to the district court for further proceedings. Because Mr. Smart's claim is completely preempted by federal law, the district court must address that claim under section 187 of Title 29, and therefore must provide him with an opportunity to amend his complaint to ensure that he properly states a claim under the gov-

erning law. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1485, 1490-91 (7th Cir. 1996); *see also Stewart v. U.S. Bancorp*, 297 F.3d 953, 958-59 (9th Cir. 2002).[10]

## B. Unwarranted Prosecution Claim

We now turn to Mr. Smart's claim of unwarranted prosecution under Illinois law. The defendants argue that, under applicable state law, the allegations of unwarranted prosecution fail as a matter of law; indeed, the district court dismissed the claims on this basis. Alternatively, the defendants maintain that the claim is preempted by section 301 of the LMRA, 29 U.S.C. § 185,[11]

---

[10] We cannot conclude that remanding the matter to the district court will result in undue hardship to the IBEW. *See* Appellees' Reply Supplemental Br. 7. Although the parties conducted discovery to prosecute and defend state-law claims, many of the facts discovered will be equally helpful in resolving the new federal claim. Additionally, the district court, in its discretion, either may grant the parties additional discovery or may limit new discovery to protect the parties or to expedite the litigation.

[11] 29 U.S.C. § 185(a) provides, in relevant part,

(a) Venue, amount, and citizenship

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the

(continued...)

because it necessarily requires interpretation of the CBA.[12]

If these additional state-law claims necessarily require the interpretation of a CBA, they are cognizable only under section 301 of the LMRA. The basic rule that governs such a preemption analysis is set forth in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988): "[A]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." *Id.* The *Lingle* approach, we have explained,

> is straightforward because the policy concern re-
> quiring preemption in the section 301 context is also
> straightforward. Federal labor policy mandates that
> uniform federal law be the basis for interpreting
> collective bargaining agreements. This policy
> reduces the possibility "that individual contract terms
> might have different meanings under state and fed-
> eral law." Conflicting interpretations of contract terms
> "would inevitably exert a disruptive influence on the

---

[11] (...continued)

> parties, without respect to the amount in controversy or
> without regard to the citizenship of the parties.

[12] The defendants note that preemption under section 301 is "complete" and argue that this complete preemption is the basis for federal question jurisdiction in this suit. For the reasons set forth in this section, we need not reach the question of preemption because the claims fail as a matter of law on grounds unrelated to the CBA.

> collective bargaining process." Not every dispute tangentially involving a CBA is preempted by the LMRA.

*Douglas v. American Info. Techs. Corp.*, 877 F.2d 565, 569 (7th Cir. 1989) (footnote omitted) (quoting *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962)).

To prevail on an unwarranted prosecution claim in Illinois, Mr. Smart must show that the defendants brought the underlying suits maliciously and without probable cause and that the underlying suits were terminated in Mr. Smart's favor. *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (Ill. 1997). Here, the suits underlying the unwarranted prosecution claim focused on the IBEW's effort to enforce an arbitration award in its favor and also to collect unpaid employee benefit contributions due under the CBA.[13] There is, however, no need to interpret the CBA in this case because, as the district court correctly noted, Mr. Smart's pleadings have made clear that, at the time that he filed his complaint in this case, he already had failed to prevail in these actions. Local 702 prevailed on the merits in both.[14] Mr. Smart's claim, therefore, fails as a matter of law on that element. We need not reach the question of whether the suits were pursued without probable cause—the only element that might involve interpreta-

---

[13] *See supra* note 1.

[14] In his response to the motion to dismiss, Mr. Smart did not claim that the defendants misrepresented the disposition of these cases.

tion of the CBA. *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 773 (4th Cir. 1998) (noting that a district court may pretermit the preemption question when the action is clearly without merit); *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1263 (4th Cir. 1989) (same); *Washington v. Union Carbide Corp.*, 870 F.2d 957 (4th Cir. 1989). *Cf. Foy v. Giant Food, Inc.*, 298 F.3d 284, 290-91 (4th Cir. 2002) (observing that the question of whether employer's action in prosecuting employee was malicious involved evaluation of whether motive was improper, which, in turn, required interpretation of the collective bargaining agreement). Therefore, even if Mr. Smart's unwarranted prosecution claim would have required interpretation of the CBA and therefore was preempted, the claim still would fail because his submissions to the district court did not contest that he failed to prevail on the underlying actions.

## C.  Legal Malpractice Claim

   Mr. Smart's malpractice claim does not require interpretation of the CBA. In Illinois, a claim for legal malpractice requires a showing of four elements: "(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages." *Lopez v. Clifford Law Offices, P.C.*, 841 N.E.2d 465, 470-71 (Ill. App. Ct. 2005). According to Mr. Smart's complaint, he did not have an attorney-client relationship with Mr. Grant or with the firm of Schuchat, Cook & Werner. Consequently, regardless of

how the CBA is interpreted, Mr. Smart's claim must fail. Because Mr. Smart has alleged facts in his complaint that necessarily preclude relief, he pleaded himself out of court, and the district court was correct to dismiss his claim. *See Benders v. Bellows & Bellows*, 515 F.3d 757, 767 (7th Cir. 2008) (observing that "a plaintiff can plead herself out of court by alleging facts that show she is not entitled to a judgment").

### D. Motions to Amend

Mr. Smart also submits that the district court erred in its decision to deny two motions to amend his complaint. The motions sought to remove the legal malpractice claim and to add claims of fraud and conspiracy to commit fraud on the court; the new claims were based on allegedly false statements that the defendants submitted to the court in previous litigation. We review the district court's denial of Mr. Smart's motions for an abuse of discretion. *See Bressner v. Ambroziak*, 379 F.3d 478, 484 (7th Cir. 2004).

The district court did not abuse its discretion in denying Mr. Smart's motions to amend. The court denied the first motion to amend for the following reasons: (1) Mr. Smart failed to comply with a local rule requiring that the plaintiff attach a copy of the proposed amended complaint, (2) he failed to explain why the claims were not included in the original complaint, and (3) at least one of the proposed claims did not meet the minimal requirements of notice pleading. The court denied Mr. Smart's second motion to amend because, although Mr. Smith was aware

of the factual basis of the proposed new claims much earlier, he did not submit the second motion to amend until after the close of discovery and after his complaint had been dismissed with prejudice. The court also denied the motion because amendment would be futile. Specifically, the court noted that Mr. Smart sought to add a claim of fraud on the court; however, he had failed to allege facts that suggested that he had relied to his detriment on the allegedly fraudulent statements made by the defendants. We previously have upheld district courts' denials of motions to amend where there has been undue delay in bringing the motions or the motions would be futile. *See, e.g., Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001); *see also Tanner v. Neal*, 232 F. App'x 924 (11th Cir. 2007) ("Although courts liberally construe pro se pleadings, the litigant is still required to conform to procedural rules, and the court is not required to rewrite a deficient pleading."). Therefore, we cannot say that the district court's denial of the motions, under the circumstances presented here, constitutes an abuse of discretion.[15]

---

[15] Mr. Smart also argues that the district court's dismissal of his claims violated his Seventh Amendment right to a jury trial. The Seventh Amendment is not violated by a proper dismissal for failure to state a claim. *See, e.g., Smith v. Kitchen*, 156 F.3d 1025, 1029 (10th Cir. 1998); *cf. 3 Penny Theater Corp. v. Plitt Theaters, Inc.*, 812 F.2d 337, 340 (7th Cir. 1987) (Rule 41(b) dismissal for failure to prosecute).

## Conclusion

For the foregoing reasons, we affirm that portion of the district court's decision holding that Mr. Smart's state antitrust claim is preempted. However, because Mr. Smart's complaint includes allegations of secondary boycott activity for which relief is available under 29 U.S.C. § 187, we remand that claim to the district court for evaluation under the appropriate federal standard. We affirm the district court's dismissal of Mr. Smart's unwarranted prosecution and legal malpractice claims. The judgment of the district court, therefore, is affirmed in part, reversed in part and remanded for further proceedings. Mr. Smart may recover his costs in this court.

AFFIRMED in PART,
REVERSED and REMANDED in PART