SKYLINE ROOFING & SHEET METAL COMPANY, INC., Appellant–Plaintiff,

v.

ZIOLKOWSKI CONSTRUCTION, INC., and United Union of Roofers, Waterproofers and Allied Workers Local # 26, Appellees–Defendants.

No. 71A03–1105–PL–202.

Court of Appeals of Indiana.

Oct. 25, 2011.

---

Troy M. Miller, V. Samuel Laurin III, Bryan H. Babb, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellant.

Edward B. Keidan, Conway & Mrowiec, Chicago, IL, Beverly J. Mack, Huelat Mack & Kreppein, P.C., Michigan City, IN, Attorneys for Appellee Ziolkowski Construction, Inc.

Paul T. Berkowitz, Paul T. Berkowitz & Associates, Ltd., Chicago, IL, Attorney for Appellee United Union of Roofers, Waterproofers and Allied Workers Local # 26.

**OPINION**

BARTEAU, Senior Judge.

*STATEMENT OF THE CASE*

Plaintiff–Appellant Skyline Roofing & Sheet Metal Company, Inc. ("Skyline"), appeals the trial court's dismissal with prejudice of its amended complaint against Defendants–Appellees Ziolkowski Construction, Inc. ("Ziolkowski"), and United Union of Roofers, Waterproofers, and Allied Workers Local # 26 ("Local 26"). We reverse and remand.

*ISSUE*

Skyline raises several issues, which we consolidate and restate as: whether the trial court erred by dismissing its amended complaint.

*FACTS AND PROCEDURAL HISTORY*

The following facts were alleged in the amended complaint. The Kankakee Valley School Corporation ("Kankakee Valley") planned to construct a new middle school in Wheatfield, Indiana. To that end, Kankakee Valley mapped out a campaign that included enlisting unions to help pass a referendum that would eventually fund the new middle school project ("the Project"). Unions placed union members at voting sites to show their support for the referendum and the Project. The referendum passed.

In August 2009, Kankakee Valley issued an advertisement requesting bids for the Project and setting September 17, 2009, as the deadline for such bids. General contractor Ziolkowski, who planned to submit a bid for the Project, invited non-union subcontractor Skyline to bid for the roofing subcontract. On September 16, 2009, union subcontractor Midland Engineering ("Midland") provided its total bid of $2,572,200 for the roofing subcontract. Skyline provided its total bid to Ziolkowski on September 17, 2009. Skyline's bid was $1,986,984.

Ziolkowski submitted its bid to Kankakee Valley on September 17, 2009. After bids were opened, Kankakee Valley notified Ziolkowski that it was the successful bidder for the Project. Ziolkowski informed Skyline that Skyline had submitted the lowest bid for the roofing subcontract and that Ziolkowski had used Skyline's roofing bid to prepare its bid.

On September 30, 2009, Kankakee Valley received a public records request from Local 26 asking for copies of Ziolkowski's bid documents for the Project, including Ziolkowski's subcontractor list. Local 26 subsequently discovered that Ziolkowski intended to use Skyline as its roofing subcontractor. Ziolkowski and Kankakee Valley began receiving "calls and threats from various unions and union contractors threatening to picket and disrupt the Project and that other union contractors would walk off the Project if a union sub-

contractor was not used by Ziolkowski for the Roof Work." Appellant's App. p. 114.

Kankakee Valley and Ziolkowski entered into a contract for the Project. Local 26 made a post-bid contribution of funds to Midland to offset the difference between Skyline's bid and Midland's bid for the roofing subcontract. Ziolkowski awarded the roofing subcontract to Midland. "Kankakee proclaimed its success … in limiting participation to only union contractors on the Project when its superintendent stated on Kankakee's blog[,] '[F]olks may remember we intended our Project to be a local stimulus package and to the best of our ability we have kept that promise.' " *Id.* at 116.

In September 2010, Skyline filed a complaint against Ziolkowski alleging that it colluded with Kankakee Valley to exclude Skyline as the roofing subcontractor in favor of Midland in violation of the Indiana Antitrust Act. Ziolkowski filed a motion to dismiss the complaint for failure to state a claim under Indiana Trial Rule 12(B)(6) and failure to join Local 26, Midland, and Kankakee Valley as necessary parties under Indiana Trial Rule 12(B)(7). In the motion, Ziolkowski also asserted that any antitrust claims were preempted by federal labor laws. Skyline responded, and Ziolkowski replied. After a hearing, the trial court dismissed the complaint without prejudice for failure to state a claim.

In February 2011, Skyline filed an amended complaint against Ziolkowski and Local 26. The amended complaint alleged that Ziolkowski and Local 26 colluded with Kankakee Valley to exclude Skyline as the roofing subcontractor in favor of Midland in violation of the Indiana Antitrust Act:

> Thereafter, Kankakee, in an act of quid pro quo and because it was indebted to the unions that supported the Referendum, Ziolkowski and [Local 26] entered into a scheme, contract or combination whereby Ziolkowski would cancel its prior agreement with Skyline for the Roof Work and award the subcontract for the Roof Work to Midland in exchange for [Local 26's] post-bid contribution of funds to Midland to offset the difference between Skyline's bid … and Midland's bid. . . .

*Id.* at 114. Skyline claimed that as a result of the antitrust violation, it suffered damages in the form of lost time in preparing a useless bid and lost profits.

Ziolkowski and Local 26 each filed a motion to dismiss the complaint. Each motion claimed that: (1) Skyline's complaint failed to state a claim under Indiana Trial Rule 12(B)(6); (2) Skyline failed to join Midland and Kankakee Valley as necessary parties under Indiana Trial Rule 12(B)(7); and (3) Skyline's allegations were preempted by federal labor laws. Skyline responded to Ziolkowski's motion, and Ziolkowski replied. The trial court dismissed Skyline's complaint with prejudice without a hearing. Skyline now appeals.

## DISCUSSION AND DECISION

The purpose of the Indiana Antitrust Act is to prevent fraud and collusion in the letting of contracts and to protect trade and commerce against unlawful restraints and monopolies. *Gariup Constr. Co. v. Carras–Szany–Kuhn & Assocs., P.C.,* 945 N.E.2d 227, 233 (Ind.Ct.App.2011), *trans. denied.* Here, Skyline filed its complaint under two sections of the Indiana Antitrust Act. Indiana Code section 24–1–2–3 (1978) provides, "A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract for private or public work, commits a Class A misdemeanor." Indiana Code section 24–1–2–7(a) (2008), in

turn, provides a private right of action allowing treble damages, costs, and attorney's fees to "[a]ny person whose business or property is injured by a violation of this chapter."

The trial court did not specify the grounds on which it dismissed Skyline's complaint. Skyline thus addresses on appeal each of the three grounds set forth in Ziolkowski's and Local 26's motions to dismiss. Skyline contends that the trial court erred by dismissing its amended complaint because: (1) the complaint sufficiently stated a claim under the Indiana Antitrust Act; (2) Skyline did not fail to join necessary parties; and (3) the allegations are not preempted by federal labor laws. We first discuss preemption before addressing the other issues.

## I. PREEMPTION

Skyline contends that the trial court erred by dismissing its amended complaint because its Indiana Antitrust Act claim is not preempted by federal labor laws. Local 26 and Ziolkowski respond that the activities described by Skyline in its amended complaint are arguably prohibited by Section 8(b)(4)(ii)(B) of the National Labor Relations Act, which provides in pertinent part, "It shall be an unfair labor practice for a labor organization or its agents ... to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where ... an object thereof is ... forcing or requiring any person ... to cease doing business with any other person...." 29 U.S.C. § 158(b)(4)(ii)(B) (1974). Local 26 thus argues that Skyline's claim as to Local 26 is preempted by federal labor laws. In turn, Ziolkowski argues that Skyline's claim as to Ziolkowski must also be preempted by federal labor laws.

Our discussion of preemption in the context of federal labor laws is guided by the United States Supreme Court's decision in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon*, an employer brought an action in California state court when unions picketed the employer's place of business and pressured customers and suppliers to stop dealing with the employer. The Supreme Court of California held that the unions' activities constituted a tort based on an unfair labor practice under state law and affirmed the lower court's award of damages to the employer. On certiorari, the *Garmon* Court found the state claim preempted and reversed. The Court held that "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245, 79 S.Ct. 773. The Court reasoned:

... To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

At times it has not been clear whether the particular activity regulated by the States was governed by [Section] 7 or [Section] 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of

the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board.

*Id.* at 244–45, 79 S.Ct. 773 (footnote omitted) (citations omitted).

■ Even if conduct is arguably prohibited by Section 8, however, a plaintiff's claim is not preempted under *Garmon* when: (1) the activity regulated is a merely peripheral concern of federal labor laws or (2) the regulated conduct touches interests so deeply rooted in local feeling and responsibility that preemption cannot be inferred absent compelling congressional direction. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 660–61 (7th Cir. 1992) (citing *Garmon*, 359 U.S. at 243–44, 79 S.Ct. 773).

We first address Skyline's amended complaint as to Local 26. The facts alleged in the amended complaint show that: (1) Skyline's bid for the roofing work was lower than Midland's bid; (2) after Kankakee Valley notified Ziolkowski that it was the successful bidder for the Project, Ziolkowski informed Skyline that Skyline had submitted the lowest bid for the roofing subcontract and that Ziolkowski had used Skyline's roofing bid to prepare its bid; (3) Local 26 sent a public records request to Kankakee Valley asking for copies of Ziolkowski's bid documents, including Ziolkowski's subcontractor list; (4) Ziolkowski and Kankakee Valley subsequently received threats from unions and union contractors that they would picket, disrupt, and walk off the Project if Ziolkowski did not hire a union subcontractor for the roofing work; (5) Local 26 made a post-bid contribution of funds to Midland to offset the difference between Skyline's bid and Midland's bid; and (6) Ziolkowski hired Midland instead of Skyline. A reasonable inference drawn from these facts is that Local 26 threatened, coerced, or restrained Ziolkowski for the purpose of forcing Ziolkowski to hire union subcontractor Midland instead of non-union subcontractor Skyline despite Skyline's lower bid. We therefore conclude that as to Local 26, Skyline's amended complaint challenges activity arguably prohibited by Section 8(b)(4)(ii)(B).

■ Skyline nonetheless argues that the regulated conduct touches interests so deeply rooted in local feeling and responsibility that preemption cannot be inferred absent compelling congressional direction. When determining whether the local-interest exception applies to prevent preemption of a claim of activity arguably prohibited by Section 8, we must consider whether there is a significant state interest in protecting the citizen from the challenged conduct and whether the exercise of state jurisdiction over the tort claim entails little risk of interference with the regulatory jurisdiction of the National Labor Relations Board. *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 196, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *see also Talbot*, 961 F.2d at 661 ("In determining whether these exceptions apply to a given case, the state's interest in remedying the effects of the challenged conduct must be balanced against the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits."). Skyline claims that the local-interest exception applies because "Indiana is uniquely concerned with ensuring that Hoosier[ ] contractors—be they union or non-union—have an opportunity to compete freely for contracts for public and private works." Appellant's Br. p. 27.

We do not believe that free competition is an interest unique to Indiana. Moreover, it is not the type of interest for which the United States Supreme Court has prevented preemption. *See, e.g., Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (no preemption where claim involved intentional infliction of emotional distress); *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (no preemption where claim involved libel); *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957) (no preemption where claim involved violence); *United Constr. Workers v. Laburnum Constr. Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954) (no preemption where claim involved threats of violence); *see also Pa. Nurses Ass'n v. Pa. State Educ. Ass'n,* 90 F.3d 797, 803 (3d Cir.1996) ("The [United States] Supreme Court has ordinarily applied [the local-interest] exception in cases where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order.... The Court has extended this exception to cover acts of trespass ... and certain personal torts ...." (citations omitted)).

Further foreclosing the local-interest exception as to Local 26 is the fact that Skyline's claim as it is presented under state law is identical to the claim as it would have been presented under federal law had Skyline filed a complaint with the National Labor Relations Board. *See Talbot,* 961 F.2d at 661 ("Of critical importance in determining whether litigation of a state claim necessarily involves a risk of interference with the unfair labor practice jurisdiction of the NLRB, is whether the controversy presented by the state claim is identical to that which could have been presented to the NLRB."). In both cases,

the key inquiry would be whether Local 26 engaged in conduct to coerce Ziolkowski to hire Midland instead of Skyline. *Cf. Sears, Roebuck & Co.,* 436 U.S. at 198, 98 S.Ct. 1745 (no preemption where the plaintiff's state trespass claim "only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim").

■ We further disagree with Skyline that *Garmon's* peripheral-concern exception applies. Resolution of the state antitrust claim would necessarily include a determination of whether Local 26 engaged in conduct to coerce Ziolkowski to hire Midland instead of Skyline. This is precisely what Section 8(b) prohibits. *See Carpenters Local Union No. 1016 v. J & D Hernly Constr. Co.,* 582 N.E.2d 381, 384 (Ind.Ct.App.1991) (peripheral-concern exception not applicable where plaintiff's complaint in state court challenged the purpose and manner of picketing because those activities were prohibited by Section 8); *cf. Commc'n Workers of Am., Local 5900 v. Bridgett,* 512 N.E.2d 195, 199 (Ind. Ct.App.1987) (when union brought action in state court against employees to enforce union fines for crossing picket line, court had jurisdiction to hear employees' defense of resignation from union; determination of whether employees were parties to a contract with the union and thus members at the time they crossed the picket line was only peripheral to any unfair labor practice issue).

Because the activity alleged in Skyline's amended complaint is arguably prohibited by Section 8(b)(4)(ii)(B) and neither of the *Garmon* exceptions apply, we conclude that Skyline's amended complaint as to Local 26 is preempted.

■ The inquiry does not end there, however. With respect to injuries result-

ing from violations of Section 8(b)(4), Congress has provided a means of redress outside of the National Labor Relations Board. Specifically, Section 303 of the Labor Management Relations Act allows for the recovery of damages for activity or conduct defined as an unfair labor practice under Section 8(b)(4):

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason o[f] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, *or in any other court having jurisdiction of the parties,* and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187 (1959) (emphasis added).

Section 303 has been discussed in *Smart v. Local 702 International Brotherhood of Electrical Workers,* 562 F.3d 798 (7th Cir. 2009). In that case, a non-union company contracted to perform electrical work for the construction of a sports complex. After entering into the contract, a union coerced the owner of the sports complex to terminate the contract with the non-union company by threatening to withhold services and otherwise shut down the project if union workers were not employed instead of the nonunion company. The owner fired the non-union company and hired a company affiliated with the union instead. The non-union company filed an action against the union in the United States District Court for the Southern District of Illinois. The complaint alleged, among other things, that the union's coercive tactics violated the Illinois Antitrust Act. The district court dismissed the state antitrust claim on the basis of preemption.

On appeal, the Seventh Circuit determined that the state antitrust claim was preempted because the activities described in the complaint were arguably prohibited by Section 8(b)(4)(ii)(B). *Id.* at 804–05. It noted that the exclusive competence of the National Labor Relations Board divests not only state courts of original jurisdiction over such claims but also federal courts of such jurisdiction. *Id.* at 806. Then, pointing to Section 303, the court stated that "there is ample evidence that Congress meant to exercise the 'extraordinary pre-emptive power . . . that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 807 (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). The court therefore held that Section 303(b) completely preempts state law claims related to conduct described in Section 8(b)(4) and provides an exclusive federal cause of action for the redress of such activity. *Id.* at 808. It therefore remanded the state antitrust claim to the district court with instructions to provide the non-union company with an opportunity to amend the complaint to state its claim under Section 303. *Id.* at 808–09.

Further, this Court has held that a state court is an appropriate forum for adjudication of a Section 303 claim. *Gentry v. United Slate, Tile & Const. Roofers, Damp & Waterproof Workers Ass'n, Anderson Local #250,* 162 Ind.App. 246, 319 N.E.2d 159, 165 (1974). The facts of *Gentry* are similar to the facts here. A general contractor hired a subcontractor to complete roofing work for a project. When a union

learned that the subcontractor employed non-union workers, it informed the general contractor that it would picket the project if the roofing work was completed by that subcontractor. As a result, the general contractor cancelled the subcontract. The subcontractor filed a complaint against the union in state court seeking damages under Section 303. Specifically, the subcontractor alleged that the union's threat to picket induced the general contractor to cease doing business with the subcontractor, constituting an unfair labor practice under Section 8(b)(4) and entitling the subcontractor to damages under Section 303. The trial court dismissed the action.

On appeal, this Court noted the *Garmon* preemption doctrine but determined that it does not preempt an action for damages under Section 303. It explained:

> Under [Section] 303 a union may be sued for damages for engaging in activity defined as an unfair labor practice under [Section] 8(b)(4) regardless of whether an unfair labor practice charge has been filed with the Board. Further, a successful action for damages under [Section] 303 may be maintained despite a finding by the NLRB that the union conduct complained of did not violate [Section] 8(b)(4). The justification for the anomaly allowing conflicting conclusions on the same factual setting is that both a public wrong and a private wrong exist. By conducting administrative proceedings to enforce the National Labor Relations Act and its amendments, the NLRB safeguards the public interest, while a [Section] 303 suit enforces the private right even though that right arises under the same statute. Moreover, a congressional intent to allow such concurrent and independent actions is reflected in the language of the act itself.

*Id.* at 254, 79 S.Ct. 773 (footnote omitted) (citations omitted). This Court therefore held that the *Garmon* preemption doctrine does not affect a plaintiff's right to maintain an action for damages under Section 303 and ultimately reversed the dismissal. *Id.* at 254, 255, 79 S.Ct. 773.

In line with *Smart* and *Gentry*, we conclude that although Skyline articulated its claim against Local 26 under the Indiana Antitrust Act, it has pleaded a federal claim under Section 303, over which our state courts have subject matter jurisdiction. We therefore reverse the trial court's dismissal as to Local 26 and remand with instructions to allow Skyline an opportunity to amend its complaint to ensure that it states a claim against Local 26 under Section 303.

■ Finally, Ziolkowski argues that Skyline's claim as to Ziolkowski must also be preempted by federal labor laws. We disagree. Ziolkowski points to Section 8(b) to support its claim, but that provision defines the unfair labor practices of "a labor organization or its agents." Further, although Section 8(a) defines the unfair labor practices of employers, none of the facts in Skyline's amended complaint alleged that Ziolkowski engaged in any unfair labor practices as defined in that provision. Our resolution as to Local 26 does not absolve Ziolkowski of responsibility under state law.

## II. SUFFICIENCY OF COMPLAINT

■ Skyline also contends that the trial court erred by dismissing its amended complaint because it sufficiently stated a claim under the Indiana Antitrust Act. A motion to dismiss for failure to state a claim under Indiana Trial Rule 12(B)(6) tests the legal sufficiency of the claim, not the facts supporting it. *Charter One Mortg. Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind.2007). Thus, our review of a trial

court's decision on a motion based on Trial Rule 12(B)(6) is de novo. *Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmoving party's favor. *Id.* A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.* at 605. All allegations must be accepted as true, and it is the appellate court's duty to determine whether the underlying complaint states any set of allegations upon which the court below could have granted relief. *Droscha v. Shepherd,* 931 N.E.2d 882, 887 (Ind.Ct.App.2010). Dismissal of a complaint under Trial Rule 12(B)(6) is generally disfavored because such motions undermine the policy of deciding causes of action on their merits. *Id.*

■ As noted earlier in this opinion, Skyline filed its complaint under two sections of the Indiana Antitrust Act. Indiana Code section 24–1–2–3 provides, "A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract for private or public work, commits a Class A misdemeanor." Indiana Code section 24–1–2–7(a), in turn, provides a private right of action allowing treble damages, costs, and attorney's fees to "[a]ny person whose business or property is injured by a violation of this chapter." A plaintiff requesting damages under the Indiana Antitrust Act must prove three essential elements: (1) a violation of the statute; (2) injury to a person's business or property proximately caused by the violation; and (3) actual damages. *Thompson v. Vigo Cnty. Bd. of Cnty. Comm'rs,* 876 N.E.2d 1150, 1155 (Ind.Ct.App.2007), *trans. denied; City of*

*Auburn v. Mavis,* 468 N.E.2d 584, 585 (Ind.Ct.App.1984). The only element at issue is whether Skyline's amended complaint alleged a violation of Section 3.

■ Specifically, Ziolkowski asserts that "receipt of a threat is not collusive activity between Ziolkowski and any other entity." Ziolkowski's Br. p. 7. To support this proposition, Ziolkowski states, "There must be some combination or collusive activity between two or more distinct entities before there can be a violation of antitrust laws. Unilateral action is not sufficient." *Id.* However, the cases Ziolkowski cites for this statement of law deal with an entirely different set of facts. Those cases dealt with multiple schemers that were all part of the same entity. *See Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 727 (7th Cir.1979) ("[O]n the basis of the record before us, we are of the opinion that for antitrust purposes, Fotomat and Labs were really one entity and thus could not have conspired in violation of [Section] 1 [of the Sherman Act]."); *Fuller v. Town of Vevay ex rel. Vevay Town Council,* 713 N.E.2d 318, 322 (Ind.Ct.App.1999) ("It is undisputed that the individuals named by the Fullers were all officials acting by or on behalf of the Town of Vevay. It is clear then that the Town of Vevay cannot scheme, contract or combine with itself in violation of Indiana Code Section 24–1–2–3."), *trans. denied; Tilbury v. City of Fort Wayne,* 471 N.E.2d 1183, 1186 (Ind.Ct. App.1984) ("[I]t is undisputed that all of the named defendants are in fact, branches or departments of the City of Fort Wayne; they are in effect but a single entity—the municipal government of the City of Fort Wayne. The individuals named by Tilbury were all officials or agents acting by or on behalf of that entity, albeit in different departments. It is clear then that the City of Fort Wayne cannot scheme, contract or combine with itself in violation of

IC 24–1–2–3."). Here, Skyline's claim alleged collusion between three entirely distinct entities: Kankakee Valley, Ziolkowski, and Local 26.

Moreover, Skyline does not contest and in fact agrees with Ziolkowski that the mere receipt of a threat does not constitute collusive activity. *See* Appellant's Br. p. 16 ("Skyline agrees that the initial 're-ceipt of threats is not "collusive" activi-ty.'"); Appellant's Reply Br. p. 6 ("For the third time, Skyline is not asking any court to rule that the mere receipt of a threat is actionable under Section 3."). Instead, Skyline argues that its amended complaint alleged that Ziolkowski did more than receive a threat. We agree. As to Ziolkowski, the facts as alleged in the amended complaint show that: (1) Sky-line's bid was $585,216 lower than Mid-land's bid; (2) Ziolkowski informed Sky-line that Skyline had submitted the lowest bid for the roofing subcontract and that Ziolkowski had used Skyline's roofing bid to prepare its bid; (3) unions and union contractors threatened Kankakee Valley and Ziolkowski that they would picket, dis-rupt, and walk off the Project unless Ziol-kowski hired a union subcontractor for the roofing work; and (4) Ziolkowski hired Midland instead of Skyline after Kankakee Valley awarded the contract to Ziolkowski and after Local 26 made a post-bid contri-bution of funds to Midland to offset the difference between Skyline's bid and Mid-land's bid. These facts show that Ziolkow-ski not only received a threat, but decided to hire Midland instead of Skyline despite Skyline's lowest bid.

Furthermore, the fact that Skyline had the lowest bid for the roofing work brings us to another point. To support its argu-ment that it did not violate Section 3, Ziolkowski states that "[i]n response to those threats, Ziolkowski allegedly hired an equal-priced union subcontractor, in-stead of non-union Skyline." Ziolkowski's Br. p. 8. However, Midland was not an equal-priced subcontractor at the time Ziolkowski opened the roofing bids. Sky-line's bid for the roofing work was $585,216 lower than Midland's bid. It was only after bidding had closed on the Pro-ject that Midland, receiving funds from Local 26, was able to offer Ziolkowski the same bid price as Skyline. This in itself is a sufficient allegation of a scheme to ex-clude Skyline and a restraint on free com-petition.[1]

We must reverse the dismissal if Sky-line's amended complaint states any set of allegations upon which the court below could have granted relief. *See Droscha,* 931 N.E.2d at 887. Based on this lenient standard, we conclude that Skyline's amended complaint sufficiently alleged a violation of Section 3. That is, taking the facts as true and construing all reasonable inferences in Skyline's favor, the amended complaint sufficiently alleged that Ziolkow-ski colluded with Kankakee Valley and Lo-cal 26 to exclude Skyline as the roofing subcontractor in favor of Midland. The amended complaint is sufficient to survive a motion to dismiss.

## III.  NECESSARY PARTIES

Skyline finally contends that the trial court erred by dismissing its amended complaint because it did not fail to join necessary parties. Ziolkowski states, "The trial court dismissed Skyline's Complaint

---

1. Ziolkowski also argues that Skyline's state antitrust claim must fail because Skyline's amended complaint alleged the existence of a job targeting program. We disagree that Sky-line has alleged the existence of a job target-ing program. In any event, Ziolkowski pro-vides no citation, and we find none, for the proposition that a state antitrust claim must fail if it alleges a job targeting program.

for the reasons discussed ... above [preemption and failure to state a claim]. But because Skyline also argues the issue of who is a necessary party, Ziolkowski addresses that issue in this section." Ziolkowski's Br. p. 16. The trial court's order did not state on what basis it dismissed Skyline's complaint. We therefore address the claim.

■ In its motion to dismiss the amended complaint, Ziolkowski argued that Skyline failed to name Kankakee Valley and Midland as necessary parties. On appeal, Ziolkowski correctly abandons its argument regarding Kankakee Valley, noting that a governmental entity cannot be liable for damages under Section 7. *See Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 344 (Ind.2005) (concluding that governmental entities are not subject to criminal or civil liability under Indiana Antitrust Act). However, Ziolkowski then argues that since Kankakee Valley is an indispensible party, the entire action was properly dismissed. We disagree. If this were the case, no party could ever succeed in an Indiana Antitrust Act claim in which a governmental entity was alleged to be a part of the collusion. Ziolkowski further argues that since Kankakee Valley made the threats against Ziolkowski, it would be inappropriate to hold Ziolkowski liable while exempting Kankakee Valley from liability. First, the facts of the amended complaint do not reveal the extent of Kankakee Valley's or Ziolkowski's role in the alleged collusion. It would therefore be improper for us to presume at this stage in the proceedings that Ziolkowski had a smaller role in the collusion. Further, the statute imposes liability on those who collude to restrict bidding and those who restrict free competition. It provides no exception for those who collude "less."

■ Ziolkowski further maintains that Midland is a necessary party. It is within the trial court's discretion to determine the indispensability of a party. *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trs. of Ball State Univ.*, 665 N.E.2d 914, 920 (Ind.Ct.App.1996). An action need not be dismissed merely because an indispensable party was not named. *Lutheran Hosp. of Fort Wayne, Inc. v. Dep't of Pub. Welfare of Allen Cnty.*, 397 N.E.2d 638, 647 (Ind.Ct.App.1979). Where an indispensible party subject to process is not named, the correct procedure calls for an order in the court's discretion that he be made a party to the action or that the action should continue without him. *Id.*

Assuming without deciding that the trial court properly determined that Midland was a necessary party and that it was feasible to join Midland, the proper procedure would have been for the trial court to order that Midland be made a party to the action or that the action should continue without Midland. To the extent the trial court dismissed Skyline's amended complaint because Skyline did not join Midland as a necessary party, it erred by doing so.

*CONCLUSION*

In line with the foregoing, we conclude that the trial court erred by dismissing Skyline's amended complaint. We therefore reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J., and CRONE, J., concur.