**ROLLINS BURDICK HUNTER OF UTAH, INC., Appellant–Defendant,**

v.

**The BOARD OF TRUSTEES OF BALL STATE UNIVERSITY, Appellee–Plaintiff.**

No. 18A02–9409–CV–569.

Court of Appeals of Indiana.

May 20, 1996.

Robert B. Clemens, Bose McKinney & Evans, Indianapolis, for appellant.

Scott E. Shockley and James R. Williams, Defur, Voran, Hanley, Radcliff & Reed, Muncie, for appellee.

## OPINION

FRIEDLANDER, Judge.

Rollins Burdick Hunter of Utah, Inc. (RBH), appeals from a jury verdict in favor of The Board of Ball State University (Ball State) in Ball State's action against RBH for breach of contract regarding the procurement of insurance. RBH presents the following restated issues for review:

I. Did the trial court have personal jurisdiction over RBH?

II. Did the trial court err in ordering the exclusion of evidence that Ball State received reimbursement for its losses from a collateral source?

III. Did the trial court err in denying RBH's motion to join two additional parties?

IV. Did the trial court err in permitting Ball State to amend its complaint on the first day of trial for the purpose of adding a claim?

V. Was the jury's verdict supported by sufficient evidence?

VI. Did the trial court err in awarding prejudgment interest to Ball State?

We affirm.

The facts favorable to the judgment are that in March of 1990, Ball State began negotiating with the Aebli Group, Inc., a Florida corporation doing business as a sports promoter, about the possibility of playing a football game with Ohio University in Killarney, Ireland at the end of the 1990 regular season. James Aebli (Aebli) was a principal promoter who served as the Aebli Group's primary contact with Ball State. Stanley Wadman, Ball State's Director of Finance and Assistant Treasurer, informed Aebli that Ball State would not enter into a contract with the Aebli Group unless there was an insurance contract in the nature of a performance bond insuring Ball State in the event that the game was not played.

Aebli informed Ball State that he would contact RBH to discuss procuring the insurance coverage that Ball State required. In July, 1990, Ball State was being pressured by Aebli to execute the contract, but Ball State had not yet been provided with the requisite proof of insurance. At Aebli's suggestion, Wadman telephoned RBH and informed Jess Hurtado, an RBH official, of Ball State's insurance needs as follows:

> I first called Mr. Hurtado and introduced myself and identified myself. We talked briefly about the fact there was this activity taking place in Ireland and it was my understanding that he would be providing the insurance that Ball State needed. I told him about the difficulty I was having with getting the insurance from Mr. Aebli and that Mr. Aebli had suggested I talk directly to him because there was an urgency on the part of Mr. Aebli in getting the contract signed. I explained to him that we had not done business with Mr. Aebli in the past and therefore we wanted to make sure, that since there was a lot of dollars to be involved from Ball State, and it, since we had a common practice of getting certain types of coverage for certain types of events, that I was looking for certain types of insurance.

*Record* at 1148–49. Hurtado confirmed that RBH would procure the insurance required by Ball State. On July 20, RBH sent to Ball State a telefax which included the following:

| [TO: | Ball State] | FROM: | M. Jess Hurtado, Asst. Vice Pres. |
| City | | City | Salt Lake City, Utah |
| Subj. | Sports Marketing Group | Date | July 20, 1990 |

This will confirm Liability coverage for the above for the Ireland football game between Ball State and Ohio University. Coverage to include:

| General Liability aggregate including | 1,000,000 |
| Products/Completed Ops. | 500,000 |
| Personal Injury | 500,000 |
| Property Damage | 500,000 |

Non Appearance/Non performance: This coverage will be written, however, the underwriter cannot complete his underwriting today.

Carrier: ANGA

Based on this, please release the contract to Jim Aegli [sic].

/S/ Jess A. Hurtado
　　 Asst. Vice President

*Record* at 1157. RBH had contacted Lloyd's of London, which tentatively agreed to issue the insurance policy. Believing that RBH had procured or would soon procure the insurance coverage Ball State had requested, Wadman executed the contract with Aebli on behalf of Ball State.

From late July until late October or early November, Aebli engaged in activities associated with promoting the football game and the associated tour of Ireland and by late October, Aebli had collected approximately $160,000 from various individuals and entities. In late October, however, Aebli de-

manded additional fees and threatened to cancel the game if the additional money was not paid. Both universities refused Aebli's demand. Wadman informed RBH of the possibility that Ball State would make a claim against the coverage for non-performance by Aebli. Realizing that Ball State did not have a copy of the policy, Wadman called RBH and requested one.

On November 1, 1990, Ball State declared Aebli to be in breach of the contract and refused to participate in the game. On that same day, RBH telefaxed to Ball State a copy of an insurance policy issued by Lloyd's of London, providing $199,000 non-performance/non-appearance coverage to the Aebli Group. Ball State contacted Hurtado and RBH about Ball State's policy and made a demand on the insurance policy issued by Lloyd's of London. Only then did Ball State discover that RBH had failed to procure the non-appearance/non-performance coverage which Ball State had requested, and therefore Ball State was not insured against non-performance by the Aebli Group.

Ball State filed a complaint against RBH alleging negligence, estoppel, and breach of contract. The matter proceeded to trial, which commenced on April 26, 1994. The jury found in favor of Ball State and judgment was entered against RBH in the amount of $188,094.68, including prejudgment interest.[1]

### I.

■ RBH contends that the trial court erred in denying its motion to dismiss based upon lack of personal jurisdiction. In considering a challenge to personal jurisdiction where the contacts themselves serve as the basis for jurisdiction, we review the nature and quality of the contacts, the relationship between the contacts and the cause of action, convenience, and Indiana's interest in providing a forum for its residents. *Fetner v. Maury Boyd & Assoc., Inc.*, 563 N.E.2d 1334 (Ind.Ct.App.1990), *trans. denied.*

■ When a party seeks affirmative relief from a court before interposing a timely objection to the court's jurisdiction over his person, he has voluntarily submitted himself to the court's jurisdiction and is estopped from challenging the lack of personal jurisdiction. *Schneider v. Schneider,* 555 N.E.2d 196 (Ind.Ct.App.1990). The filing of a motion for change of judge constitutes seeking affirmative relief from the court. *Id.* In the instant case, RBH filed a motion for change of judge on September 21, 1992. RBH's first challenge to the court's *in personam* jurisdiction was not raised until the answer was filed, which occurred more than three weeks later. By requesting affirmative relief from the court before challenging the court's jurisdiction, RBH is estopped from raising the defense. *Id.*

### II.

■ During opening statement to the jury, Ball State's counsel made the following assertion:

> Ball State expended about a hundred and four thousand dollars ($104,000.00) in its reimbursement of its tour subscribers, and you will hear evidence concerning why they did that. Ball State itself had spent about fifty-six thousand dollars ($56,000.00) in money it sent to Jim Aebli that it never got a dime back of.

*Record* at 754–55. During RBH's cross-examination of John Worthen, Ball State's vice president, RBH attempted to introduce evidence that the two payments referred to above were made by allegedly independent entities, the Ball State Alumni Association and the University Foundation. Ball State objected to the line of questioning and the trial court sustained the objection upon its determination that the source of the funds was not relevant. RBH contends that the court erred in so ruling.

■ Only the real party in interest may bring suit to recover damages allegedly resulting from breach of contract. *See Cook v. City of Evansville,* 178 Ind.App. 20, 381 N.E.2d 493 (Ind.Ct.App.1978). RBH con-

---

1. Oral argument in this cause was conducted on April 15, 1996 on the campus of Indiana University–Kokomo in Kokomo, Indiana.

tends that the evidence was relevant to show that Ball State did not make payments and therefore, to the extent the reimbursements were recoverable as damages, Ball State was not a real party in interest and was not entitled to damages.

Ball State disputes the contention that the Foundation and the Alumni Association can be characterized as separate entities in this context. Vice President Worthen testified that the Alumni Association was "a part of" Ball State University, *Record* at 1062, and the Alumni Association was accountable to the University. Indeed, it appears that the Alumni Association's activities in the instant case were carried out largely at the direction of the University, including reimbursement of funds. Therefore, the reimbursements may have been paid by the Alumni Association, but ultimately University funds were utilized. In any event, the court's decision was correct under the collateral source rule.

■ According to the collateral source rule, evidence of a collateral source is irrelevant and prejudices the jury on the questions of damages and liability and cannot be used to mitigate damages. *See Nahmias Realty, Inc. v. Cohen*, 484 N.E.2d 617 (Ind.Ct.App. 1985), *trans. denied; Aldridge v. Abram & Hawkins Excavating Co., Inc.*, 474 N.E.2d 107 (Ind.Ct.App.1985), *trans. denied.* The funds ultimately used for reimbursement were deposited into a Ball State clearing account by the Foundation and disbursed by the Alumni Association. The funds were used to reimburse parties to whom the University was liable as a result of the cancellation of the Ireland event. Pursuant to the collateral source rule, the source of the funds used to satisfy Ball State's liability was irrelevant and could not be considered by the jury in mitigation of damages. *Nahmias Realty, supra; Aldridge, supra.* The trial court did not err in excluding such evidence.

## III.

On April 18, 1994, eight days before trial, RBH filed a motion to compel the joinder of Lloyd's of London and Aebli as necessary parties. RBH contends that the trial court erred in denying the motion.

■ RBH filed the motion for joinder pursuant to Trial Rule 19 of the Indiana Rules of Trial Procedure, which states:

A person who is subject to service of process shall be joined as a party in the action if:

(1) in his absence complete relief cannot be accorded among those already parties; or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest, or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If he has not been so joined, the court shall order that he be made a party.

T.R. 19 follows closely Rule 19 of the Federal Trial Rules and, in the absence of Indiana court decisions regarding T.R. 19, this court may look for guidance to federal court decisions interpreting F.R. 19. *See* 2 William F. Harvey, *Indiana Practice* 198.

■ It is within the trial court's discretion to determine the indispensability of a party and we will disturb the trial court's ruling only for abuse of discretion. *McVay v. Western Plains Serv. Corp*, 823 F.2d 1395 (10th Cir.1987). The rule governing joinder of parties does not set forth a rigid or mechanical formula for making the determination, but rather is designed to encourage courts to apprise themselves of the practical considerations of each individual case in view of the policies underlying the rule. *JTG of Nashville, Inc. v. Rhythm Band, Inc.*, 693 F.Supp. 623 (M.D.Tenn.1988). Therefore, we employ a fact-sensitive, flexible analysis. *Johnson & Johnson v. Coopervision, Inc.*, 720 F.Supp. 1116 (D.Del.1989). The burden of proving that joinder is necessary rests with the party asserting it. *Nevada Eighty–Eight, Inc. v. Title Ins. Co. of Minnesota*, 753 F.Supp. 1516 (D.Nev.1990).

RBH's liability was based upon the claim that it was negligent in procuring insurance to cover a loss suffered by Ball State resulting from the Aebli Group's breach. Therefore, the Aebli Group was indispensable for T.R. 19 purposes only on the theory that it was "a party claiming an 'interest relating to the subject of the action'" and, in its absence, "persons already parties [would be] left with substantial risk of incurring inconsistent obligations." 2 Harvey, *supra,* Civil Code Study Commission comments at 200 (1987). In other words, the Aebli Group was a necessary party only as to the issue of which party was responsible for breaching the contract. Although RBH could have chosen to defend by attacking the truth of the premise underlying Ball State's claim, i.e., that the Aebli Group breached the contract to promote the football game, it did not do so.

During opening statement, RBH's counsel stated:

> My client did exactly what he [sic] was supposed to do. He gave them, he gave Mr. Aebli, the Sports Marketing Group, this nonappearance, nonperformance policy, no more, no less, that's exactly what he was supposed to do and that's exactly what he represented he was doing, and that's exactly what he did. My client didn't do anything wrong. He did exactly what he was supposed to do. The fact that Ball State University entered into a contract with this guy and *he breached it* and he didn't have the insurance coverage that they wanted, that's their problem.

*Record* at 808–09 (emphasis supplied). Counsel's statement constitutes an admission that, for purposes of Ball State's action against RBH, the Aebli Group breached the contract with Ball State. *See Maldonado by Maldonado v. Gill,* 502 N.E.2d 1371 (Ind.Ct. App.1987), *trans. denied.* RBH's trial strategy reflects that RBH did not defend upon the theory that the Aebli Group did not breach the contract. RBH did not depose Aebli, attempt to secure his presence at trial, or in any other way address the issue of which party breached the contract. RBH waived the joinder issue by presenting a defense which rendered the Aebli Group's presence unnecessary. Therefore, on the facts of this case, the trial court did not err in denying RBH's T.R. 19 motion to join additional parties.

## IV.

The original complaint was filed on July 17, 1992. On February 12, 1994, Ball State petitioned for leave to file an amended complaint for purposes of adding a third-party beneficiary claim. The motion was granted on April 12, 1994 and Ball State filed its amended complaint on April 26, 1994, the first day of trial. RBH contends the trial court erred in permitting the amendment.

The decision of whether to permit an amendment to pleadings is committed to the trial court's sound discretion and will be reversed for abuse of discretion. *Palacios v. Kline,* 566 N.E.2d 573 (Ind.Ct.App.1991). The factors considered in reviewing such decisions are undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice to the nonmovant, and the futility of the amendment. *Id.* RBH contends that the trial court abused its discretion in permitting the amendment because the undue delay prejudiced RBH in the preparation and presentation of its defense.

RBH's claim of prejudice is that the amended complaint raised new issues that required discovery and additional analysis. However, Ball State attached a copy of the proposed amended complaint to the motion for leave to amend. The proposed amended complaint was identical to the amended complaint which was file stamped on the first day of trial, which in turn was identical to the original complaint except for the count adding the third-party beneficiary claim. The proposed complaint was served upon RBH in February. Therefore, RBH knew in February the substance of the amendment and had adequate notice to begin preparing a defense. However, RBH did not conduct discovery relating to the added claim until after the motion was granted two months later. We note also that the court denied a motion for a continuance filed by RBH for the purpose of securing additional time to prepare a defense

for the added claim. However, the court offered to sever the newly added count and proceed to trial on the original three counts. RBH declined. Finally, there is no indication that the amendment was sought in bad faith or with dilatory motive. *See Indiana High School Athletic Ass'n v. Schafer*, 598 N.E.2d 540 (Ind.1992), *trans. denied.*

We conclude that RBH's lack of preparation time was due at least in part to its own lack of diligence. RBH's choice to proceed to trial on the added count when it was given the option by the trial court to adjudicate that issue at a later date further weakens its claim of prejudice. The trial court did not abuse its discretion in permitting Ball State to amend the complaint.

## V.

The jury returned a verdict in favor of Ball State on four counts: negligence, estoppel, breach of contract, and third-party beneficiary. RBH claims that the evidence was insufficient to sustain the verdicts.

■ Ball State was required to prove its case by a preponderance of the evidence. *See Burke v. City of Anderson*, 612 N.E.2d 559 (Ind.Ct.App.1993), *trans. denied.* When a jury verdict is challenged upon grounds of the sufficiency of evidence, the record must demonstrate that the evidence was insufficient under every theory of liability before prejudice is established, and the verdict will be sustained if the evidence is sufficient under any theory of liability. *Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217 (Ind.1988). In reviewing the evidence, we neither reweigh the evidence nor judge witness credibility, and examine only the probative evidence and reasonable inferences in favor of the verdict. *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135 (Ind.1988).

■ RBH contends that there was insufficient evidence of negligence. RBH argues that a negligence finding must have been premised upon RBH's alleged failure to procure insurance, which could only have been premised upon an agency relationship between RBH and Ball State. RBH contends that the evidence revealed that no such relationship existed. According to RBH, it was an insurance broker acting on behalf of Aebli, not Ball State.

■ The question of whether an insurance agent or broker acts on behalf of a particular proposed insured is a question of fact which must be determined by the factfinder after considering all of the evidence. *United Farm Bureau Mut. Ins. Co. v. Cook*, 463 N.E.2d 522 (Ind.Ct.App.1984). RBH was in direct contact with Ball State several times and was informed as to the University's insurance needs. RBH then took Ball State's needs into account in searching for particular insurance coverage. The record supports the conclusion that RBH assumed a duty toward Ball State and that RBH would be liable for breach of that duty. *Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844 (Ind.Ct.App.1990), *trans. denied.*

■■ The estoppel count in Ball State's complaint alleged that RBH was estopped from denying the existence of a contract to procure insurance. In order to prevail upon this count, Ball State was required to prove, *inter alia*, that Ball State "was without knowledge, or means of knowledge, of real facts," *Record* at 378, the third element of an estoppel claim. RBH contends that the evidence was insufficient to prove this element.

■ The "fact" to which the third element alludes in the instant case is the fact that the insurance policy procured by RBH did not provide the coverage Ball State had requested. RBH contends that Ball State could have reviewed the policy at any time, but simply failed to do so. However, the duty of an insured to acquaint itself with a policy may be excused when *"the strength of the agent's oral assurances lulled the prospect into not reading, or reading inattentively,* dense and rebarbative *policy language."* *Village Furniture Inc. v. Associated Ins. Managers, Inc.*, 541 N.E.2d 306, 308 (Ind.Ct. App.1989), *trans. denied* (quoting *Burns v. Rockford Life Ins. Co.*, 740 F.2d 542, 544 (7th Cir.1984)) (emphasis in original). There is evidence of record which supports the conclusion that Ball State telephoned RBH before the policy was delivered and was assured by RBH, erroneously, that the policy it had procured on Ball State's behalf provided the

specified coverage. Ball State relied upon this representation in executing the contract with the Aebli Group. Accordingly, Ball State's failure to read the policy was not fatal to its estoppel claim. *Id.*

RBH contends that the evidence was insufficient to prove that a contract existed between RBH and Ball State because there was no offer and acceptance or consideration. Ball State's Treasurer testified that he communicated Ball State's insurance requirements to RBH and RBH agreed to procure the insurance. This constituted a valid offer and acceptance. When RBH represented that it had procured the insurance, Ball State executed the contract with the Aebli Group. Ball State suffered a detriment thereby in undertaking an obligation to pay Aebli's fee in reliance upon RBH's representation that the specified insurance had been procured. *See Goeke v. Merchants Nat'l Bank and Trust Co. of Indianapolis,* 467 N.E.2d 760 (Ind.Ct.App.1984), *trans. denied.* The evidence was sufficient to prove the existence of a contract.

In order to prevail upon the theory of third-party liability, Ball State was required to prove (1) a clear intent by RBH and Aebli to benefit Ball State by virtue of the contract between RBH and Aebli, (2) a duty imposed upon Aebli and RBH in favor of Ball State, and (3) performance of the contract between Aebli and RBH was necessary to render a benefit to Ball State as intended. *See Barth Elec. Co. v. Traylor Bros., Inc.,* 553 N.E.2d 504 (Ind.Ct.App. 1990). RBH contended that it did not intend to benefit Ball State, that it did not know Ball State wanted insurance covering nonperformance by the promoter, and that performance of the contract with the Aebli Group, i.e., the policy as written, would not have benefitted Ball State. However, RBH's contentions are belied by the fact that RBH named Ball State as additional insured on the contract, thereby evincing an intention to benefit Ball State. A duty thus arose when RBH placed Ball State's name on the insurance contract. Obviously, performance of the insurance contract was required to render direct benefit to Ball State, a named insured.

RBH has failed to demonstrate that the evidence was insufficient to support the judgment.

## VI.

RBH contends that the trial court erred in awarding prejudgment interest to Ball State.

Prejudgment interest may only be awarded when the amount of damages is ascertainable in accordance with fixed rules of evidence and accepted standards of valuation and is the result of mere computation. *Lystarczyk v. Smits,* 435 N.E.2d 1011 (Ind. Ct.App.1982). Such damages are not appropriate where they are not liquidated and cannot be determined until after judgment. *Erie–Haven, Inc. v. Tippmann Refrigeration Constr.,* 486 N.E.2d 646 (Ind.Ct.App.1985). RBH contends that the amount of damages awarded by the jury in the instant case did not satisfy the ascertainability requirement set out in *Lystarczyk, supra,* because the award differed from the amount demanded by Ball State, which in turn differed from the amount Ball State claimed as out-of-pocket loss. We disagree that the damage award was too speculative to justify an award of prejudgment interest.

The basis of the award is clearly ascertainable. The jury award represents the amount of money deposited with the Aebli Group for the tour, reduced by the percent of fault attributed to Ball State by the jury. The fact that the award differed from the amount requested by Ball State, as a result of the comparative fault reduction, is not fatal to the award of prejudgment interest. *See Indiana Indus., Inc. v. Wedge Prod., Inc.,* 430 N.E.2d 419 (Ind.Ct.App.1982). Moreover, the reduction for Ball State's comparative fault addresses the issue of liability and does not reflect that damages were arrived at through resort to speculation. The trial court did not err in awarding prejudgment interest.

Judgment affirmed.

SHARPNACK, C.J., and RUCKER, J., concur.