

FILED

Mar 26 2015, 10:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Michael V. Knight
Barnes & Thornburg LLP
South Bend, Indiana

ATTORNEY FOR AMICUS CURIAE: SAVE
OUR SHORELINE

Keith A. Schofner
Lambert Leser
Bay City, Michigan

ATTORNEYS FOR AMICUS CURIAE:
PACIFIC LEGAL FOUNDATION

Paul Edgar Harold
LaDue Curran & Kuehn LLC
South Bend, Indiana

Mark Miller
Pacific Legal Foundation
Palm Beach Gardens, Florida

ATTORNEYS FOR APPELLEE:
TOWN OF LONG BEACH

L. Charles Lukmann, III
Charles F.G. Parkinson
Harris Welsh & Lukmann
Chesterton, Indiana

ATTORNEY FOR APPELLEES:
ALLIANCE FOR THE GREAT LAKES
AND SAVE THE DUNES

Jeffrey B. Hyman
Conservation Law Center
Bloomington, Indiana

ATTORNEY FOR APPELLEE: LONG
BEACH COMMUNITY ALLIANCE

Kurt R. Earnst
Braje, Nelson & Janes, LLP
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LBLHA, LLC, Margaret L. West, and Don H. Gunderson, *Appellants-Plaintiffs,* <br><br> v. <br><br> Town of Long Beach, Indiana, Alliance for the Great Lakes and | March 26, 2015 <br><br> Court of Appeals Case No. 46A05-1404-PL-146 <br><br> Appeal from the LaPorte Circuit Court <br><br> The Honorable Thomas J. Alevizos, Judge <br><br> Cause No. 46C01-1212-PL-1941 |

Save the Dunes, Long Beach
Community Alliance, Patrick
Cannon, Roger Gansauer, David
Oei, Bernard Rabinowitz, and
Joan Smith,

*Appellees-Defendant and Intervenor*

*Defendants.*

**Brown, Judge.**

LBLHA, LLC, Margaret L. West, and Don H. Gunderson (collectively, the "Lakefront Owners") appeal orders of the trial court dismissing all counts of their complaint against the Town of Long Beach, Indiana (the "Town") and other intervenor defendants, raising several issues. We find dispositive at this stage in the proceedings whether the State of Indiana or appropriate State officials as individuals in their official capacity should have been added or joined as a party or parties to the proceedings prior to the rulings on the Lakefront Owners' claims. We reverse and remand.

*Facts and Procedural History*

As of April 27, 2011, a webpage of the Indiana Department of Natural Resources (the "IDNR") stated that "[t]he dividing line on Lake Michigan and other navigable waterways between public and private ownership is the ordinary high watermark ["OHW"]." Appellants' Appendix at 45. The webpage included two case examples, the first of which stated that "[w]hen

Lake Michigan's water level is 'above' the [OHW] the State 'does not' own part of the dry beach," and the second of which stated that, "[w]hen Lake Michigan's water level is 'below' the [OHW] the State 'does' own part of the dry beach." *Id.* at 46. The second case example showed a diagram specifying the location of the OHW and the actual lake level and indicating "Private" for the area above the OHW and "State Ownership" for the area from the OHW to the actual lake level. *Id.*

[3] The National Resources Commission ("NRC") conducted a meeting on November 15, 2011. According to the meeting minutes, IDNR's chief legal counsel presented information with respect to the shoreline along Lake Michigan. The meeting minutes state:

> [Counsel for IDNR] said there has not been a legal determination of what is the upper limit of the bed of Lake Michigan. In 1995, the Lakes Preservation Act established an elevation of 581.5 feet as the ordinary high water mark for Lake Michigan. "Where that falls on the beaches up there changes from season to season as the sand erodes and is put back." The State of Indiana has historically claimed ownership of what is below the ordinary high water mark; however, research has not produced evidence to support that claim. "All that is out there states that the beds of the navigable waters belong to the states, so what is the bed? Is it just what's under water or is it a distance beyond the water's edge? There is no legal guidance with regard to what we would actually own or hold in trust for the public, which is sort of issue number two here, is what are we, the State, holding in trust for the public use?"

*Id.* at 295. Counsel for IDNR explained that the Town has an extensive beach area that did not exist twenty years ago and asked "[d]o we focus on ownership

or do we focus on what the State holds in trust for the public use." *Id.* at 296. Counsel for IDNR stated "this is an important issue that has yet to be settled," that "[t]he ownership issue has been litigated extensively in the surrounding states," that "[t]he Ohio Supreme Court issued an opinion favoring the private property owners, as did the States of Michigan, Illinois, and Wisconsin," and that "[a]s you can imagine there are a lot of people used to using those beaches that don't live there. It will impact their use of the beach." *Id.* Counsel for Long Beach property owners provided an information binder to members of the NRC which he indicated consisted of plat information and copies of source documents, and noted that the language on the IDNR's website contained the claim of ownership by the State of Indiana below the OHW, that the property owners desired for that language to be removed, and that the deeds for his clients "go down to the low water mark." *Id.* at 297. Counsel for Long Beach property owners also stated that "Michigan's public right says for its citizens that its citizens may traverse its lake shore beneath the ordinary high water mark," that "Michigan limited its public rights to just traversing only, and stopping on the beach to fish, sunbathe, or for any other activity was not allowed," and that "Ohio found that private property rights run down to the water's edge." *Id.* Counsel further said that "the cases that have been decided by neighboring State Supreme Courts have not held that the public rights doctrine has trumped anybody's private deed," that a resolution passed by the Town "states that it is no longer defending someone's private property right below the ordinary high water mark based on the website publication," and that all of the Long Beach lakefront property owners except one signed a petition.

*Id.* The matter of the information posted on IDNR's website was taken under consideration.

[4] As of October 10, 2012, the IDNR webpage provided that the OHW "is the line on Lake Michigan and other navigable waterways used to designate where regulatory jurisdiction lies and in certain instances to determine where public use and ownership begins and/or ends." *Id.* at 48. The webpage again included two case examples, the first of which stated that "[w]hen Lake Michigan's water level is 'above' the [OHW], the State does not regulate any of the dry beach," and the second of which stated that, "[w]hen Lake Michigan's water level is 'below' the [OHW], the State does regulate part of the dry beach." *Id.* at 49. The second case example showed a diagram specifying the location of the OHW and the actual lake level and indicating "Private" for the area above the OHW and "State Regulatory Jurisdiction" for the area from the OHW to the actual lake level. *Id.*

[5] The Town enacted, by vote of the Town Council on November 12, 2012, Resolution 12-003 (the "2012 Resolution")[1] which provided in part:

> [Indents throughout original omitted] WHEREAS, the bed of Lake Michigan adjacent to Long Beach, Indiana, is owned by the State of Indiana; and,

---

[1] Resolution 12-003 stated that it amended Resolution No. 10-002.

WHEREAS, disputes have arisen relative to the location of boundary lines between private owners and the state of Indiana along the shores of Lake Michigan in Long Beach, Indiana; and,

WHEREAS, these disputes can create issues regarding the enforcement by the Long Beach Police Department of PUBLIC PROPERTY ORDINANCES; and,

WHEREAS, it is desirable that a clear policy be established relative to the enforcement of PUBLIC PROPERTY ORDINANCES on properties adjacent to Lake Michigan in the Town of Long Beach, Indiana, both for the benefit of private property owners, the general public and law enforcement officials; and,

NOW THEREFORE BE IT RESOLVED, by the TOWN COUNCIL of the Town of Long Beach, Indiana, that the following policy be and is hereby adopted:

> 1. The [Town] recognizes and accepts [IDNR's] position as reflected in its publications including, but not limited to, its website, the ordinary high watermark is the line on Lake Michigan used to designate where the state's regulatory jurisdiction lies and, in certain instances, to determine where public ownership or use begins and/or ends.

> 2. That the ordinary high watermark is an elevation of 581.5 feet, as adopted by the U.S. Army Corps of Engineers, and the Indiana Natural Resources Commission found at 312 IAC 1-1-26.[2]

---

[2] 312 IAC 1-1-26 provides:

"Ordinary high watermark" means the following:

3.  The Long Beach Police Department shall only enforce PRIVATE PROPERTY ORDINANCES between Lake Shore Drive and Lake Michigan in the following locations:

> A.  The entire lengthy [sic] and width of all publicly owned beach accesses above the elevation of 581.5 feet.

> B.  The entire length and width of all lots owned by the [Town] above the elevation of 581.5 feet.

*Id.* at 69-70.

On December 10, 2012, the Lakefront Owners filed a complaint against the Town.  The Lakefront Owners alleged that LBLHA, LLC, is an association of private property owners of real property abutting Lake Michigan, that West and Gunderson are individual property owners owning property in lots on Lake Shore Drive, Long Beach, Indiana, and that the Town adopted a resolution which has resulted in its failure to enforce private property rights on the

---

(1) The line on the shore of a waterway established by the fluctuations of water and indicated by physical characteristics.  Examples of these physical characteristics include the following:

> (A) A clear and natural line impressed on the bank.
> (B) Shelving.
> (C) Changes in character of the soil.
> (D) The destruction of terrestrial vegetation.
> (E) The presence of litter or debris.

(2) Notwithstanding subdivision (1), the shore of Lake Michigan at five hundred eighty-one and five-tenths (581.5) feet I.G.L.D., 1985 (five hundred eighty-two and two hundred fifty-two thousandths (582.252) feet N.G.V.D., 1929).

lakefront. The Lakefront Owners, under Count I, sought declaratory relief and alleged that there is no public right burdening the lakefront, that the Town is unlawfully claiming rights on the lakefront, and that determination of the Town's lakefront claims are particularly well suited for declaratory relief. The Lakefront Owners alleged that the Town acted under color of state law and deprived the Owners of their real property under Count II, that the Town's assertion of ownership and public trust rights is an unconstitutional temporary taking of the Lakefront Owners' property rights for which just compensation is due under Counts III and IV, and that the Town has violated the Home Rule Act found at Ind. Code § 36-1-3-8 under Count V. The Town filed an answer on March 4, 2013, and alleged as an affirmative defense that the Lakefront Owners "failed to join persons needed for just adjudication pursuant to Rule 19, Indiana Rules of Court, specifically the State of Indiana and/or its Department of Natural Resources." *Id.* at 67.

[7] On June 18, 2013, the court granted a motion to intervene as defendants filed by Alliance for the Great Lakes and Save the Dunes (together, "Alliance") and a motion to intervene as a defendant filed by Long Beach Community Alliance. On June 24, 2013, Alliance filed an answer to the Lakefront Owners' complaint alleging in part as an affirmative defense that "the State received absolute fee title to the bed of Lake Michigan up to the Ordinary High Water Mark at statehood to be held in trust for the public, and the State has not relinquished or transferred that title on the disputed Long Beach property" and that "[n]o entity

except the Indiana Legislature has the power to convey those lands that rightfully belong to the State." *Id.* at 104.

[8]     On July 23, 2013, the Lakefront Owners filed a Motion for Declaratory Summary Judgment and its designation of evidence and memorandum of law. In the motion, the Lakefront Owners requested judgment as a matter of law that their northern property boundary extends at least to the line at which the water of Lake Michigan usually stands and that the 2012 Resolution of the Town is unconstitutional and cannot stand as the Lakefront Owners own their respective property up to the water's edge without any public right burdening the property. The Lakefront Owners designated a report (the "July 2013 Report") dated July 18, 2013, prepared by Gary Kent, a professional land surveyor.

[9]     The July 2013 Report noted that Kent reviewed, among other documents and resources, the 2012 Resolution, certain provisions of the Indiana Code and Indiana Administrative Code, the Ordinance of 1787 (the "Northwest Ordinance"), the 1842 transcript of the November 1829 field notes from the original government survey of Township 38 North, Range 4 West (the "1829 Field Notes"), certain IDNR and NRC materials including NRC Bulletins #56 and #61, the Manual of Surveying Instructions published by the U.S. Bureau of Land Management, Cadastral Survey, 2009 (the "2009 BLM Manual"), and appellate opinions in Illinois, Michigan, and Ohio. After discussing the content of several of the documents and sources, including portions of the Northwest Ordinance, the 1829 Field Notes, and the 2009 BLM Manual, the July 2013

Report stated that "no existing or contemporaneous statutes or other documents were found that otherwise give clear definition to the boundary line between Lake Michigan and its upland owners." *Id.* at 287. The July 2013 Report discussed the Indiana opinion of *Bainbridge v. Sherlock*, 29 Ind. 364 (1868), related to riparian owners abutting the Ohio River, and the opinions of other states regarding the boundary line between state ownership in the Great Lakes and their upland owners. The July 2013 Report concluded in part:

> Given that the location of a boundary is a function of applying boundary law principles to the evidence recovered in the field and in the records, based on the above review and analysis of the documents identified, . . . it is my professional opinion that the northerly boundary line of the lots . . . extends at least[3] to "*the line at which the water usually stands when free from disturbing causes*." From a professional surveyor's perspective – being in the position of identifying such line on the ground and showing it on a plat of survey – it is my opinion that this means the edge of water when the lake in an undisturbed condition.

*Id.* at 288 (footnote omitted).

[10] On August 26, 2013, the Town filed a cross-motion for summary judgment as to Counts II, III, and IV of the Lakefront Owners' complaint together with its designation of evidence and a brief in support of its cross-motion and in

---

[3] As previously noted, pursuant to . . . the 2009 BLM Manual [], the title of riparian owners below the ordinary high water mark of inland navigable bodies of water is governed by State law rather than Federal law. Figure 8-4 (entitled "Inland navigable water claims by various States") on page 189 of the 2009 BLM Manual identifies Indiana as a "Low Water Mark" state, thus the northerly line of the lots could extend beyond the edge of water to the low water mark.

response to the Lakefront Owners' motion for declaratory summary judgment. In its brief, the Town argued that the Lakefront Owners' motion for declaratory summary judgment should be denied because the Town never asserted a claim of ownership of the Lakefront Owners' property and that the 2012 Resolution simply acknowledges IDNR's expression of regulatory authority. The Town argued that, "[a]s an attempt to quiet title, which is essentially what the [Lakefront Owners] seek, the Complaint fails to name indispensable parties, including the state of Indiana" and that "[t]he 'dispute' referenced in the Resolution is expressly noted as being 'between private owners and the state of Indiana,' not the Town." *Id.* at 439. The Town argued that it should be granted summary judgment on Counts II, III, and IV because the 2012 Resolution does not amount to a taking.

[11] On September 25, 2013, Alliance filed a response to the Lakefront Owners' motion for declaratory summary judgment requesting that the court grant summary judgment in favor of the Town and Alliance. Alliance argued that there were several fatal flaws in the methods and conclusions of the July 2013 Report, that thus it should be disregarded, and that, "in any event, the opinion and proofs fall short of showing a prima facie claim of ownership." *Id.* at 503. Alliance argued that the federal survey notes are the closest time to the date when the shoreline and boundary were defined and measured as they existed in 1829 and that the state land boundary in this case is controlled by the survey notes in 1829. Alliance further argued that the land below the high water mark of Lake Michigan belongs to the State of Indiana under the equal footing

doctrine and is subject to the public trust. Alliance also argued that, regardless of where the OHW is located, the public have a perpetual right of access to use the beach to the current OHW under the public trust doctrine.

[12] On October 17, 2013, the court held a hearing on the pending motions. At the hearing, counsel for the Town stated that he represented the Town and did not represent the public or the State of Indiana, and that "the only other party that could own it, other than [the Lakefront Owners], would be the State of Indiana." Transcript at 154-155. The Town's counsel later said that the State was a possible owner of the land, the court asked "[w]hy aren't they here" and "[a]ren't they a necessary party to determine that issue," and the Town's counsel replied "[w]ell, that's my point, Judge." *Id.* at 159. At a later point, counsel for the Lakefront Owners stated that the State was not present because the State agreed to disclaim any claim of ownership in Long Beach. Near the end of the hearing, the Town's counsel stated the Lakefront Owners should bring a lawsuit against the State and anyone they believe trespasses, but not the Town. Counsel for the Lakefront Owners argued that the occupiers would not be on the beach without the Town's implied consent and that the Town has expressly or implicitly adopted a position that the OHW is the dividing line between the public and private property in Long Beach.

[13] On December 26, 2013, the trial court entered summary judgment in favor of the Town with respect to Counts I through IV of the Lakefront Owners' complaint. The order stated in part:

[T]he Court finds that the [2012] Resolution passed by the Town is not a claim adverse to the [Lakefront Owners'] property rights nor does it constitute a taking. The [2012] Resolution is merely a statement of policy and does not speak to ownership of the land under discussion.

* * * * *

Within the four corners of [the 2012 Resolution], nowhere does the Town assert any ownership of any land, nor does the Town take a position relative to the ownership of any specific parcels. Given what [2012] Resolution [] actually says, it is clear that the [2012] Resolution is nothing more than an expression of policy, agreeing with the statements made by the IDNR and acknowledging the IDNR's regulatory authority on certain property adjacent to Lake Michigan.

* * * * *

This court does not reach the question of ownership over the land between the ordinary high water mark and the shore, since the Court finds that there has been no taking. In this instance, the Court feels that the matter of ownership is a pure question of law. As such, it is more properly dealt with by the Indiana Legislature and/or an appellate court in a matter where the State of Indiana is a party.

* * * * *

In conclusion, this Court finds that there was no taking by the Town of Long Beach. The [2012] Resolution passed by the town was a statement of policy and was not a claim adverse to any property right that the plaintiffs may or may not have in the land between the shore and the ordinary high water mark.

Addendum to Alliance Appellee's Brief at 5-8; Appellants' Appendix at 19-20. The order further stated, "[t]here being no further cause for delay, the Court enters judgment for [Town] in Counts 1-4 of [the Lakefront Owners'] Complaint." Appellants' Appendix at 20.

[14] On January 23, 2014, the Lakefront Owners filed a motion for leave to file an amended complaint with a proposed amended complaint. In the motion, the

Lakefront Owners noted that the trial court's December 26, 2013 order stated in part that "[i]n this instance, the Court feels that the matter of ownership is a pure question of law" and that "it is more properly dealt with by the Indiana Legislature and/or an appellate court in a matter where the State of Indiana is a party." *Id.* at 822. The Lakefront Owners requested that the court grant them leave to add the State of Indiana as a party, "to decide the 'pure question of law' regarding ownership of the area, 'between the ordinary high water mark and the shore,' so that any aggrieved party, including the [Lakefront Owners], Town, [Alliance] or the newly added State of Indiana could take the trial court's decision to an appellate court." *Id.* The Lakefront Owners argued that granting them leave to file their amended complaint would not prejudice any party. The Lakefront Owners further stated that "[t]he State, through the Attorney General's Office, knows of and has no objection to this motion or being added as a party defendant" and "[t]he Town and [Alliance] have each argued to add the State as a party." *Id.* at 823.

[15] Also on January 23, 2014, Lakefront Owners filed a motion to correct error. The Lakefront Owners argued in part that a genuine issue of material fact exists as to whether the 2012 Resolution, as applied and shown by the Town's actions, effect an unconstitutional taking of the Lakefront Owners' properties and that, therefore, the court should reverse summary judgment in the Town's favor regarding Counts II through IV of the Lakefront Owners' complaint. The Lakefront Owners also argued that the court erred in granting the Town summary judgment on Count I for declaratory judgment because the court

found the matter of ownership is a pure question of law, that the Town and Alliance admit they are claiming a public right in the Lakefront Owners' properties, that the count is proper for declaratory relief, and that "the ownership question is a <u>dispositive</u> issue" and "[a] declaration regarding the boundaries of [Lakefront Owners'] properties and whether their properties are burdened by a public trust/public right is necessary in order to determine whether the Resolutions effect a taking of [Lakefront Owners'] properties." *Id.* at 785.

[16]   On February 7, 2014, Alliance filed a response in opposition to the Lakefront Owners' motion to correct error and a motion for partial summary judgment on Count V and final summary judgment on Counts I through V. Also on that day, Alliance filed a response in opposition to the Lakefront Owners' motion for leave to amend the complaint. Alliance argued that they "do not necessarily oppose the addition of the State of Indiana as a defendant in this case, *so long as* [the Lakefront Owners] identify a current or ripening seed of controversy with the State over the boundary between State-owned or public trust property and [the Lakefront Owners'] property on the shore at Long Beach . . . ." *Id.* at 886. Alliance argued that Counts I through IV had already been decided on summary judgment, hearing from the State at this juncture would cause undue delay, and the Town and Alliance would be prejudiced by being forced to redo the litigation on Counts II through V with the State added as a defendant.

[17]   On February 10, 2014, the Town filed a response and objection to Lakefront Owners' motion for leave to file an amended complaint and a motion for

summary judgment on Count V. In opposing the filing of an amended complaint, the Town argued that the proposed amendment would be futile to the extent that it continues to press the same claims against the Town that the court has already considered and dismissed.

[18] On February 19, 2014, the Lakefront Owners filed a reply in support of its motion for leave to file an amended complaint and a reply memorandum supporting their motion to correct error. In support of its motion for leave to file an amended complaint, the Lakefront Owners maintained:

> There is no delay, prejudice or futility incurred by adding the State as a party when all opponents requested the addition and the question of ownership and use right, if any, regarding the lots abutting Lake Michigan in Long Beach, Indiana, remains.
>
> All opposing parties crowed that the State is a necessary party to this litigation but now that there is a motion for leave to add the State/[IDNR] to the litigation, curiously all opposing parties are against adding the State/[IDNR].
>
> * * * * *
>
> Each opponent claims that the State is no longer necessary because the Court correctly decided the issues on summary judgment. However, the Court's Order did not decide the public trust right, if any. . . . A decision regarding ownership and the public trust right, if any, will go a long way to resolving this case completely or minimally, streamlining the issues on appeal.
>
> * * * * *
>
> Opponents all claimed a controversy—that they all claimed rights or supported the alleged State claim of rights over the Disputed Area.[4]

---

[4] The motion defined the Disputed Area as "the land between the ordinary high water mark and the shore." Appellant's Appendix at 940.

> Count 1 was filed to declare the [Lakefront Owners'] right, the Town's right and [Alliance's] right in the Disputed Area.
>
> Curiously, [Alliance] have flip-flopped and now claim there is no controversy. . . . [Alliance] should be judicially estopped from flip-flopping.

*Id.* at 939-941. The Lakefront Owners argued that amending the complaint to add the State is what justice requires. They contend:

> The public trust has not been resolved by summary judgment, there is still a justiciable controversy and the Court should grant leave to add the State to decide the key issue regarding use rights, if any, over the Disputed Area. [Alliance] are not acting in good faith when they flip-flop and claim there is not justiciable controversy. They merely want the issue undecided to claim another summer of use rights in the Disputed Area.

*Id.* at 943. On March 6, 2014, the Lakefront Owners filed a response in opposition to the Town's motion for summary judgment regarding Count V.

[19] The chronological case summary (the "CCS") does not show that the trial court ruled on the Lakefront Owners' January 23, 2014 motion for leave to file an amended complaint or their January 23, 2014 motion to correct error. On April 1, 2014, the Lakefront Owners filed a notice of appeal from the December 26, 2013 order. On April 16, 2014, the notice of completion of clerk's record was noted in the CCS. On April 24, 2014, the court issued an order granting the Town's motion for summary judgment on Count V. The Lakefront Owners filed a notice of appeal from the April 24, 2014 order, and this court consolidated the appeals.

## *Discussion*

We find one issue dispositive, which is whether the State of Indiana, or, as appropriate, State officials as individuals in their official capacity, should have been added or joined as a party to the proceedings below under Ind. Trial Rule 19 prior to the rulings on the claims of the Lakefront Owners. Ind. Trial Rule 19(A) provides:

> Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if:
>
>> (1) in his absence complete relief cannot be accorded among those already parties; or
>>
>> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>>
>>> (a) as a practical matter impair or impede his ability to protect that interest, or
>>>
>>> (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
>
> If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

It is within the trial court's discretion to determine the indispensability of a party. *Skyline Roofing & Sheet Metal Co., Inc. v. Ziolkowski Const., Inc.*, 957 N.E.2d 176, 189 (Ind. Ct. App. 2011). An action need not be dismissed merely because an indispensable party was not named. *Id.* Where an indispensable party subject to process is not named, the correct procedure calls for an order in the

court's discretion that he be made a party to the action or that the action should continue without him. *Id.*

[22] The rule governing joinder of parties does not set forth a rigid or mechanical formula for making the determination, but rather is designed to encourage courts to apprise themselves of the practical considerations of each individual case in view of the policies underlying the rule. *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State Univ.*, 665 N.E.2d 914, 920 (Ind. Ct. App. 1996). Therefore, we employ a fact-sensitive, flexible analysis. *Id.*

[23] In their December 10, 2012 complaint, the Lakefront Owners alleged that the Town's resolutions resulted in its failure to enforce private property rights on the lakefront and specifically sought, under Count I of their complaint, declaratory relief pursuant to Ind. Code §§ 34-14-1 regarding the boundaries and public rights burdening their property.

[24] Indiana's Declaratory Relief Act is found at Ind. Code §§ 34-14-1. Ind. Code § 34-14-1-2 provides in part that "[a]ny person[5] interested under a deed . . . or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance . . . may have

---

[5] "The word "person" wherever used in this chapter shall be construed to mean any person, partnership, limited liability company, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever." Ind. Code § 34-14-1-13. *See also Harp v. Ind. Dep't of Highways*, 585 N.E.2d 652, 660, 660 n.5 (Ind. Ct. App. 1992) (noting that, "[a]lthough a court does not have subject matter jurisdiction to enter a declaratory judgment against the state, an action may be brought against state officials as individuals in their official capacity" and also stating in a footnote that "[w]e are unconvinced, however, that the distinction between an action against the state and an action against state officers in their official capacity is anything more than a legal fiction").

determined any question of construction or validity arising under the instrument, statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." Further, Ind. Code § 34-14-1-11 provides that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest that would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding," that "[i]n any proceeding in which a statute [or] ordinance . . . is alleged to be unconstitutional, the court shall certify this fact to the attorney general, and the attorney general shall be permitted to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for arguments on the question of constitutionality," that, "[i]n any proceeding that involves the validity of a municipal ordinance . . . , the municipality shall be made a party, and shall be entitled to be heard," and that, "[i]f the statute [or] ordinance . . . is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

[25] The Lakefront Owners specifically alleged in their complaint that an actual controversy exists regarding the Town's claimed public rights in the lakefront, that the Town's position was that the lakefront is property held in trust and free for all citizens to use, that there is no public right burdening the lakefront, and that the claims are particularly well suited for declaratory relief. This request for declaratory relief by the Lakefront Owners was based on resolutions passed by the Town Council. The 2012 Resolution expressly acknowledged in its recitals, and provided as reason for the resolutions, that "disputes have arisen

relative to the location of boundary lines between private owners *and the state of Indiana* along the shores of Lake Michigan in Long Beach, Indiana." Appellants' Appendix at 69 (emphasis added). One of the Town's resolutions was to recognize and accept IDNR's position that the OHW is the line on Lake Michigan used to designate where the state's regulatory jurisdiction lies "and, in certain instances, to determine where *public ownership or use begins and/or ends*," and another of its resolutions directed that "[t]he Long Beach Police Department shall *only enforce PRIVATE PROPERTY ORDINANCES* between Lake Shore Drive and Lake Michigan in the following locations," namely, "[t]he entire lengthy [sic] and width of all publicly owned beach accesses above the elevation of 581.5 feet [and] [t]he entire length and width of all lots owned by the [Town] above the elevation of 581.5 feet." *Id.* at 69-70 (emphases added).

[26] The Town filed an answer on March 4, 2013 and alleged as an affirmative defense that the Lakefront Owners "failed to join persons needed for just adjudication pursuant to Rule 19, Indiana Rules of Court, *specifically the State of Indiana and/or its Department of Natural Resources*." *Id.* at 67 (emphasis added). After the court granted Alliance's motion to intervene, Alliance filed an answer on June 24, 2013 which alleged in part as an affirmative defense that "*the State received absolute fee title* to the bed of Lake Michigan *up to the Ordinary High Water Mark* at statehood to be held in trust for the public, and *the State has not relinquished or transferred that title* on the disputed Long Beach property" and that

"[n]o entity *except the Indiana Legislature* has the power to convey those *lands that rightfully belong to the State*." *Id.* at 104 (emphases added).

[27] The Lakefront Owners later filed a motion for declaratory summary judgment on July 23, 2013, seeking "declaratory judgment in Count I" that "[t]heir northern property boundary extends at least to the line at which the water of Lake Michigan usually stands when free from disturbing causes." *Id.* at 108. The Town filed a cross-motion for summary judgment arguing that, "[a]s an attempt to quiet title, which is essentially what the [Lakefront Owners] seek, *the Complaint fails to name indispensable parties, including the state of Indiana*" and that "[t]he 'dispute' referenced in the Resolution is expressly noted as being 'between private owners *and the state of Indiana*,' not the Town." *Id.* at 439 (emphases added).

[28] At the October 17, 2013 hearing, counsel for the Town stated that he did not represent the public or the State of Indiana and that "the only other party that could own it, other than [the Lakefront Owners], would be *the State of Indiana*." Transcript at 154-155 (emphasis added). The trial court later asked, regarding the State of Indiana, "[w]hy aren't they here" and "[a]ren't they a necessary party to determine that issue," and the Town's counsel replied "[w]ell, that's my point, Judge." *Id.* at 159. The Town's counsel stated the Lakefront Owners should bring a lawsuit against the State.

[29] Following these filings and arguments, the trial court entered summary judgment on December 26, 2013 in favor of the Town and Alliance on Counts I

through IV of the Lakefront Owners' complaint. The court specifically stated that it "does not reach the question of ownership over the land between the ordinary high water mark and the shore, since the Court finds that there has been no taking" and that "[i]n this instance, the Court feels that the matter of ownership is a pure question of law" and "[a]s such, it is more properly dealt with by the Indiana Legislature and/or an appellate court in a matter where the State of Indiana is a party." Addendum to Alliance Appellee's Brief at 7-8. Thus, the court did not expressly rule on the Lakefront Owners' declaratory relief request.

[30] In their January 23, 2014 motion for leave to file an amended complaint, the Lakefront Owners noted the language of the trial court's December 26, 2013 order above that the court did not reach the question of ownership of the beach below the OHW. The Lakefront Owners argued that granting their request would not prejudice any party and stated that the Attorney General's Office had no objection to being added as a party defendant. The Lakefront Owners also noted in their motion to correct error that their claim under Count I is proper for declaratory relief and argued that the court erred in granting summary judgment in favor of the Town on that count. The trial court did not rule on the Lakefront Owners' motion for leave to file an amended complaint to add the State as a party.

[31] The parties and amici curiae devote the arguments in their respective appellate briefs primarily to the issues of ownership and of the rights of the public with respect to the area of the beach of Lake Michigan below the OHW. As noted

above and argued by the parties and amici curiae, resolution of these issues may turn to an extent on the provisions of, and the interaction of provisions of, the Northwest Ordinance, the 1829 Field Notes, the designated evidence of IDNR and NRC materials, the 2009 BLM Manual, and numerous plat and survey documents, legislative enactments, and previous appellate opinions. The parties point to appellate opinions in the states of Illinois, Michigan, and Ohio discussing various aspects of the relative rights of property owners and the public in or to such beach property. We recognize the significance of the questions of the ownership of the Lake Michigan beach area below the OHW and the rights of the public and the extent of those rights which are at issue in this action. In their appellees' brief, Alliance maintains that the State's absence from the case makes a declaration of the boundary between State and private title or the boundary of the public trust inappropriate.

[32] The record demonstrates that the trial court did not determine the ownership rights of the Lakefront Owners or public rights to the beach area at issue and thus did not rule on the substantive allegations set forth under Count I of the Lakefront Owners' complaint. While the trial court stated that it did not reach that determination because it had determined there was no taking, we observe that the Town did not establish that the Lakefront Owners are precluded from requesting the court to determine their relative property rights notwithstanding whether the designated evidence may or may not establish as a matter of law that there was not an impermissible taking. Further, it is at least possible that whether a taking has occurred or is occurring may turn in part on the nature

and extent of the Lakefront Owners' interest in the beachfront below the OHW.[6]

[33]   The parties here, including the Lakefront Owners and the Town and Alliance, make claims regarding property interests which may as a practical matter impair or impede the State's ability to protect any interest it or the public may have in or to the challenged beachfront area.  *See* Ind. Trial Rule 19(A) (providing a person shall be joined as a party if he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest).  In addition, the Lakefront Owners have claimed they own the beach area below the OHW, the Town has claimed that the property dispute is between the Lakefront Owners and the State of Indiana, and Alliance has claimed the beach property at issue here belongs to the State or is subject to the rights of the public under the public trust doctrine.  *See* Appellant's Appendix at 439 (the Town argued in its cross-motion for summary judgment that, "[a]s an attempt to quiet title, which is essentially what the [Lakefront Owners] seek, the Complaint fails to name indispensable parties, including the state of Indiana" and that "[t]he 'dispute' referenced in the Resolution is expressly noted as being 'between private owners and the state of Indiana,' not the Town"); *id.* at 510

---

[6] Factors which may be considered include the economic impact on the property owner, the extent to which the action has interfered with investment-backed expectations, and the character of the government action. *See State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 211 (Ind. 2009), *reh'g denied*, *cert. denied*, 558 U.S. 1147, 130 S. Ct. 1136 (2010).

(Alliance argued in its response to the Lakefront Owners' motion for declaratory summary judgment that "[t]he land below the high water mark of Lake Michigan . . . belongs to the State of Indiana . . . and is subject to the public trust," that "Indiana cases and law firmly affirm the state's ownership," that the Lakefront Owners "have provided no proofs suggesting that the state has relinquished its claim to title up to the Lake Michigan boundary established by the 1829 survey," and that "any title interest held by [the Lakefront Owners] below the ordinary high water mark is subject to the rights of the public under the public trust doctrine").  Alliance alleged that "the State has not relinquished or transferred" title to the disputed beach area and that those areas "rightfully belong to the State," *id.* at 104, and the Town argued that the "'dispute' referenced in the Resolution is expressly noted as being 'between private owners and the state of Indiana . . . .'" *Id.* at 439.  Further, as argued by the Lakefront Owners, the Town and Alliance will not be prejudiced by the addition of the State of Indiana as a party.  Also, according to the Lakefront Owners' motion, the Attorney General's Office has no objection to being added as a party defendant.  Based upon the record, we conclude that the trial court should have joined the State or appropriate State officials as individuals in their official capacity[7] as a party or parties in the proceedings below prior to ruling on the Lakefront Owners' claims.

---

[7] *See Harp*, 585 N.E.2d at 660 (noting that, "[a]lthough a court does not have subject matter jurisdiction to enter a declaratory judgment against the state, an action may be brought against state officials as individuals in their official capacity").

[34] The Town and Alliance have repeatedly asserted that the Lakefront Owners' claims are actually against the State. Although we conclude that the trial court should have added the State or State officials as a necessary party or parties to these proceedings and remand for it to do so, we note that this does not mean the Lakefront Owners have no separate claim against the Town. The trial court found that the 2012 Resolution "is merely a statement of policy," but it is a policy for the enforcement of the Town public property ordinances in a certain manner with respect to the Disputed Area. Regardless of the State's position concerning ownership of the Disputed Area, the Lakefront Owners are objecting to the Town's ordinances as they affect their property rights which, in turn, have implicated the State's interest in the lakefront land. Moreover, until the State is joined as a party and makes its position clear, there are questions regarding whether the Town's policy for enforcement of its ordinances conflicts with the State's position, whether they can conflict, and if so, which body has the right to make the determination, among others. In short, the State is a necessary party, but the Town remains so as well because the Lakefront Owners potentially have separate claims against them.

[35] Further, as noted above, the trial court did not rule on the substantive allegations in Count I of the Lakefront Owners' complaint and thus did not make findings regarding the extent and nature of the private rights of the Lakefront Owners, and we find that entry of summary judgment on Count I was improper. With respect to the claims under Counts II through IV of the complaint, at this juncture we decline to address the parties' arguments related

to whether the Town's resolutions and actions amounted to or could amount to an unconstitutional taking, until the State of Indiana has had the opportunity to take a position as to Count I and the Lakefront Owners' other claims. As noted, it is possible that whether a taking has occurred may turn in part on the nature and extent of the Lakefront Owners' interest in the beachfront area below the OHW. These claims may be addressed by the trial court on remand and, if appeal is subsequently sought, Indiana's appellate courts in light of the determination of the nature and extent of the relative private and public rights to the area of the Lake Michigan beach at issue. We find that the entry of summary judgment on Counts II through IV of the complaint was improper at this stage in the proceedings.

[36] In addition, with respect to Count V, Ind. Appellate Rule 8 provides in part that this court "acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary." Following the Lakefront Owners' April 1, 2014 notice of appeal from the trial court's December 26, 2013 order, the notice of completion of clerk's record was noted in the CCS on April 16, 2014. Thus, the trial court did not have the authority to enter its April 24, 2014 order with respect to Count V. *See Crider v. Crider*, 15 N.E.3d 1042, 1064 (Ind. Ct. App. 2014) (noting that, under Indiana Appellate Rule 8, when a party initiates an appeal from a trial court order, this court acquires jurisdiction on the date the notice of completion of clerk's record is noted in the CCS and that orders issued by a trial court after this date generally are void), *trans. denied*; *see also Jernigan v. State*, 894 N.E.2d 1044, 1046 (Ind. Ct.

App. 2008) (concluding *sua sponte* that the trial court did not have jurisdiction to rule on the motion from which the appellant appealed).

[37]     In sum, we conclude the State of Indiana or appropriate State officials as individuals in their official capacity should have been added or joined as a party or parties to the proceedings prior to the rulings on the parties' respective summary judgment motions and, accordingly, we reverse the court's entry of summary judgment with respect to Counts I through IV of the Lakefront Owners' complaint. We also find the court was without authority to enter an order as to Count V on April 24, 2014. After the State of Indiana is given the opportunity to present its position with respect to its ownership interest or the interest of the public in or to the disputed beach area, the trial court may rule on the parties' summary judgment motions or proceed to trial with respect to one or more of the Lakefront Owners' claims. We express no opinion regarding the allegations under any of the counts of the Lakefront Owners' complaint or arguments set forth in the parties' summary judgment materials or on appeal by the parties or amici curiae with respect to the Lakefront Owners' claims.

## *Conclusion*

[38]     For the foregoing reasons, we reverse the court's December 26, 2013 order entering summary judgment with respect to Counts I through IV of the Lakefront Owners' complaint, reverse the court's April 24, 2014 order with respect to Count V, and remand to allow the addition of the State of Indiana or appropriate State officials as individuals in their official capacity as a party or parties, and for further proceedings consistent with this opinion.

Reversed and remanded.

Bailey, J., and Robb, J., concur.